511 So.2d 1134 (1987)
Clara Annie McCARDIE
v.
WAL-MART STORES, INC.
No. 87-C-0620.
Supreme Court of Louisiana.
September 9, 1987.
Rehearing Denied October 29, 1987.
Jack Brittain, Brittain, Williams & McGlathery, Natchitoches, for applicant.
Oscar Barnes, III, Barnes & Jefferson, Monroe, for respondent.
DIXON, Chief Justice.
Clara Annie McCardie slipped and fell in a Wal-Mart store on January 26, 1984. Her injuries included a fracture in the lower left leg for which she was hospitalized and treated. The trial judge rejected the demands of plaintiff, and the court of appeal affirmed. McCardie v. Wal-Mart Stores, Inc., 504 So.2d 111 (La.App. 2d Cir.1987). Writs were granted to review the defendant's burden of proof in a slip and fall case when the plaintiff demonstrates she slipped on a foreign substance.
This Wal-Mart store covers an area of 49,000 square feet. It contains numerous departments and sells a great variety of most items that are found in retail stores such things as clothing of all kinds, electronic equipment, automotive equipment, sporting goods, jewelry, lawn and garden things, school supplies, household goods, building material, hardware and cosmetics of all kinds.
The hazards in this store are comparable to those in so-called "supermarkets," and the principles to be applied in cases of accidental injuries to customers should be the same. As the court of appeal correctly stated:
"The primary issue is whether a large retail outlet store, after proof by plaintiff that a foreign substance on the floor caused her to slip, fall, and sustain injuries, presented proof which exculpated itself from liability.
. . . . .
... The store owner is required to prove that its employees did not cause the hazard and that it exercised such a degree of care that it would have known under most circumstances of a hazard caused by customers...." McCardie v. Wal-Mart Stores, Inc., supra at 112.
This accident occurred in an area called the "ethnic counter," a 24 foot long aisle displaying beauty aids and cosmetics designed primarily for black customersa subdivision of the health and beauty section of the store and a well patronized department. The floor slab was covered with a light shade of neutral colored asphalt or apparently vinyl tile, whose basic color was broken up with flecks of various shades.
*1135 Wal-Mart's witnesses were the managerial personnel who investigated the accident, clerical employees with a particular responsibility for the area of the fall, and those who responded to the cries of the plaintiff for help. An accident report specified the cause of the fall as a "liquid spill very light coatingnot noticeable." Polaroid colored photographs taken by an employee caution that the liquid was "not noticeable;" in fact, it is not visible in the pictures.
Witnesses disagreed as to the size of the spill, estimating it from 4 inches to a foot in diameter. Most described it as an oily substance; some said it was like water. Some said it was odorless; some said it smelled like coal oil, or kerosene, or "unscented lamp oil," which was sold in a nearby aisle.
No one else was in the aisle when plaintiff fell. Her cries of "help me!" attracted nearby clerks and plaintiff's companions of the morning. She was in a seated position with her left leg beneath her, and was unable to rise without help. The clerk normally responsible for the "ethnic aisle" had left for her break, talking to the "safety sweep" employee on the way, then responding to a call on the intercom to work at the cash register, where she was at the time of the fall.
The employees and managers agreed on the program to guard against spills, which one assistant manager testified were a daily occurrence. All employees were to be constantly alert for things on the floor as they went about their other duties. The store was cleaned each night. There was a "safety sweep" procedure before and after noon by a stockman, who punched a time clock as he began and ended the sweep. The "sweep" did not mean that all aisles were to be swept, or that all of each aisle would be swept. All aisles were supposed to be checked, however, for hazards on the floor. The safety sweeper approached the ethnic aisle shortly before the fall. Whether he completed the sweep is doubtful, because the time card shows he did not "punch out" upon completion. Both the sweeper and the management witnesses agreed that the stockman sweeping was subject to being called for other duties and the absence of a "punch out" might indicate that he had forgotten to punch out or that he had been called for other duties.
The "safety sweep" was the only program which required an employee during store hours to devote his exclusive attention to the floor. Clerks were to check the floors as they checked, straightened, cleaned or marked their stock, or marked up their books and records.
No one testified that the substance on the floor was anything other than a clear liquid. Some said it was hard to see; others said it was easy to see. No one saw it until after the fall.
Most of the vigorously contested trial revolved around the defense that plaintiff had planned with others to fall intentionally in the store and claim to be hurt. The trial judge correctly found that defendant had not met its burden of proof. The judge also found that "petitioner did establish that there was a foreign substance on the floor when she entered the store." In addition, the judge held that Wal-Mart "met the reasonable effort required of it to keep the passageways reasonably safe."
In Kavlich v. Kramer, 315 So.2d 282 (La. 1975), this court held that after a plaintiff proves there was a foreign substance on a store's floor (the floor of a self-service convenience store) that caused the plaintiff to fall and sustain an injury, the burden of proof shifts to the owner of the store to exculpate itself from the presumption that it was negligent. The result of this shift in the burden of proof is to relieve the plaintiff of his burden to show the defendant's actual or constructive knowledge of the spill. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984).
In Brown, supra at 687, this court held:
"Under the new evidentiary burden, the store operator is required to prove that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers."
*1136 The plaintiff argues defendant failed to meet its twofold burden. We agree. Although Wal-Mart described in detail its safety procedures as set out in the court of appeal decision, the defendant failed to prove that none of its employees caused the spill. Many of the employees who could have caused the spill were not asked to testify. Merely proving adequate clean up procedures is insufficient to prove a spill was not caused by one of the store's own employees.
We find the defendant failed to meet its burden of proof. Therefore, the judgments of the lower courts are reversed and judgment is now rendered in favor of the plaintiff, Clara Annie McCardie, at defendant's cost. The case is remanded to the court of appeal to determine damages due the plaintiff.
LEMMON, J., dissents, agreeing with the decision of the court of appeal.
COLE and MARCUS, JJ., dissent and assign reasons.
COLE, Justice (dissenting).
I respectfully dissent.
The Court of Appeal found, from the testimony of those who either worked or had responsibilities in the area where the fall occurred, it is reasonable to infer none of the defendant's employees created the hazardous condition. I believe this to be correct.
In extremely large stores, such as the one here involved, there are hundreds of employees. Any one of those persons could have caused the liquid spill which created the hazardous condition. A question arises, relative to the burden of proof borne by "slip and fall" defendants, as regards the number of employees who must deny causing the spill in order to prove "none of its employees caused the spill." The majority does not imply all of the employees must be called to testify. It does state that in this instance many of the employees who could have caused the spill were not asked to testify. It is at this point I depart from the result reached by the majority.
It is difficult to say which ones and how many of the employees in large "supermarkets" are needed to satisfy the burden of proving that none of them created the hazard. However, in this instance the department's manager, the manager of the ethnic counter alongside the aisle where the fall occurred, the manager of the houseware and chemicals department, and the store's assistant manager, all of whom were in the area numerous times preceding the fall, testified they did not observe the liquid substance on the floor until after the accident occurred. I believe this evidence is sufficient to satisfy the defendant's burden of proof. Requiring more might well suggest the imposition of an impracticable and almost insurmountable burden of proof every time someone is unfortunate enough to fall in these large market places. These situations are just as likely to be caused by customers and other persons as they are by the employees of the store involved. It is for these reasons that I respectfully dissent.
MARCUS, Justice (dissenting).
In Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685, 687 (La.1984), this court held: "The more appropriate inquiry is whether the store operator took reasonable steps to fulfill its twofold duty to discover and to correct dangerous conditions reasonably anticipated in its business activity." We found that the defendant in Brown failed to exculpate itself from the presumption that it was negligent because it failed to prove that it had adequate inspections and clean-up procedures. I consider it unreasonable for a defendant to have to prove additionally that none of its employees caused the spill. This would require the proof of a negative. Proving adequate inspections and clean-up procedures should be sufficient to rebut the presumption of negligence. Accordingly, I respectfully dissent.