525 So.2d 24 (1988)
James THOMAS, Jr. & Brenda Thomas, Plaintiffs-Appellants,
v.
K-MART CORPORATION, Defendant-Appellee.
No. 87-31.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Writ Denied March 25, 1988.
*25 Kenneth N. Hawkins, Bob Broussard, Lafayette, for plaintiffs-appellants.
Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, P.C., Marjorie G. O'Connor, Lafayette, for defendant-appellee.
Before GUIDRY and YELVERTON, JJ., and SWIFT[*], J. Pro Tem.
GUIDRY, Judge.
This is a slip and fall case. Rosalyn Thomas injured herself on June 10, 1985, while shopping, when she allegedly slipped and fell on Pine-Sol cleaning liquid which was on the floor in an aisle of the K-Mart store in Lafayette, Louisiana. James Thomas, Jr. and Brenda Thomas, on behalf of their minor child, Rosalyn, brought this damage suit against defendant, K-Mart Corporation.
After a hearing on the merits, the trial judge concluded that Rosalyn Thomas broke the bottle herself and caused the spill and, in any event, "plaintiffs failed to prove their case by a preponderance of the evidence". Accordingly, the trial court rendered judgment in favor of K-Mart dismissing plaintiffs' suit at their costs. Plaintiffs appealed.

FACTS
On June 10, 1985, plaintiff, Rosalyn Thomas, went into defendant's store with her sister, Laura Henry, to purchase some household cleaning items. Laura and Rosalyn made their way through several departments before Laura asked Rosalyn to obtain a bottle of Pine-Sol in the next aisle. Rosalyn proceeded to the next aisle. According to Rosalyn's testimony, while looking for the Pine-Sol, she slipped on what she later determined to be a spill of Pine-Sol cleaning liquid. She testified that she did not see the Pine-Sol or the broken bottle before she fell. Rosalyn was alone when she allegedly slipped and fell, however, Laura heeded her cry for help and, upon arriving on the scene, helped her off the floor. Store personnel were called and the Loss Prevention Manager filled out an accident report. The following day Laura took Rosalyn to a Walk-In Clinic. Rosalyn was seen by Dr. Henry J. Kaufman who found contusions to the left hip and knee and muscle spasm in the lumbar area. The latter finding prompted his diagnosis that Rosalyn suffered from a mild strain of the lower back which was consistent with the slip and fall accident described to him.

*26 LIABILITY
On appeal, plaintiffs urge that the trial court manifestly erred in finding that Rosalyn did not slip and fall and, in fact, broke the bottle which caused the Pine-Sol spill.
All of the witnesses who testified agreed that there was a spill of Pine-Sol on the floor. Rosalyn testified that she slipped and fell when she stepped into the spill. Laura testified that she came to Rosalyn's assistance in response to hearing the sound of a fall. Upon entering the aisle, Laura stated that she saw Rosalyn laying on the floor with her left leg twisted underneath her buttocks. Laura then helped Rosalyn up from the floor. Several witnesses, who appeared on the scene shortly following Rosalyn's alleged fall, testified that Rosalyn had a single spot/stain of Pine-Sol on the rear of her skirt in the area of her left hip. One of these witnesses, Mary Andrus, a former sales clerk employed at the involved K-Mart store on the date and time of the accident, stated that Rosalyn was holding the bottom part of the broken bottle in her left hand which was positioned near the area of her left hip. All of these witnesses, although admitting the presence of a Pine-Sol spill on the floor, testified that they saw no evidence that a person had walked through or slipped in the spill.
In dismissing plaintiffs' suit, the trial judge apparently rejected the testimony of Rosalyn and her sister, Laura, and accepted the testimony of defendant's witnesses which he characterized as "truthful and accurate". Presumably, the trial court concluded that Rosalyn did not slip and fall in the Pine-Sol spill on the basis of the testimony of the several witnesses to the effect that they observed the spill to be a "clean spill" which had been undisturbed and on the testimony of Mary Andrus to the effect that when she arrived on the scene, Rosalyn was holding the bottom part of a broken bottle in her hand which was positioned near the area of her left hip.
We have carefully considered this record, under the manifest error standard of appellate review, and conclude that the trial court clearly erred when it determined that plaintiff, Rosalyn Thomas, failed to establish, by a preponderance of the credible evidence, that she slipped and fell in a spill of Pine Sol on the floor of defendant's store.
We discern no significant conflict in the testimony of the witnesses who testified. All witnesses testified that a spill of Pine-Sol was on the floor. Rosalyn testified that she slipped and fell in a spill of Pine-Sol. Rosalyn was alone at the time of her fall and there is no evidence in the record directly contradicting her statement in this regard. In our view, the testimony of defendant's several witnesses, that the spill was a "clean spill" with no obvious signs that a person had stepped therein, is not necessarily in conflict with Rosalyn's testimony and certainly not such as to require a total rejection of same. Admittedly, defendant's several witnesses appeared on the scene several minutes after Rosalyn's slip and fall. It would not be unreasonable to conclude that, with the passage of time, the liquid spill, seeking its own level, erased any sign of having been disturbed. Another reasonable hypothesis is that when the bottle of Pine-Sol fell from the shelf, the liquid splattered such that there may have been one large accumulation and other small spills which would cause a slip and fall yet leave the large accumulation of liquid undisturbed.
Likewise, we do not consider the testimony of Mary Andrus so material as to require a complete rejection of Rosalyn's testimony. In our review of this record, we accept as credible the testimony of Mary Andrus that, when she arrived on the scene, Rosalyn was holding the bottom part of a broken Pine-Sol bottle against her left hip, and we accept this fact as a reasonable explanation for the presence of the spot/stain on Rosalyn's skirt.[1] However, we do not consider these facts as proof that Rosalyn broke the bottle which caused the spill and/or that she did not slip and fall. The fact that Rosalyn was holding the bottom part of a broken Pine-Sol bottle does *27 not establish that she broke the bottle. The conclusion that Rosalyn broke the bottle and then deliberately slipped and fell in the Pine-Sol liquid would defy imagination. On the other hand, the conclusion that Rosalyn broke the bottle and then feigned a slip and fall would be consistent with the basic finding except for the injuries sustained by Rosalyn which were confirmed by Dr. Henry Kaufman in an examination of Rosalyn conducted the following morning. In his written reasons for judgment, the trial judge made no reference whatever to the testimony of Dr. Kaufman.
Dr. Kaufman testified that Rosalyn gave him a history of having slipped and fell the previous day in the K-Mart store. His examination disclosed objective signs of injury which, he testified, were consistent with a slip and fall accident. In our opinion, Dr. Kaufman's testimony corroborates the testimony of Rosalyn and her sister, Laura, and serves to dispel any seeming conflict in the evidence.
For the foregoing reasons, we determine that plaintiffs established by a reasonable preponderance of the evidence that a foreign substance (Pine-Sol) was on the floor of defendant's store which caused their daughter, Rosalyn, to slip, fall and sustain injury. The trial court clearly erred in finding otherwise.
In slip and fall cases, when a plaintiff proves that he/she slipped and fell because of a foreign substance on the floor, a presumption of negligence arises and the burden of proof shifts to the defendant to introduce exculpatory evidence to negate the presumption that it was negligent. Arnold v. TG & Y Stores, 466 So.2d 529, 532 (La.App. 3rd Cir.1985), writ denied, 470 So.2d 126 (La.1985).
With reference to the defendant's burden of proof in such cases, our Supreme Court stated in Brown v. Winn-Dixie of Louisiana, Inc., 452 So.2d 685 (La.1984), at pages 686-687:
"The critical effect of the partial shifting of the evidentiary burden was the virtual elimination of proof of actual or constructive knowledge as an element of plaintiffs case. The spill of a foreign substance onto the floor is caused either by a store employee or by a customer. Under the new evidentiary burden, the store operator is required to prove that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. Implicit in the change of judicial attitude regarding constructive knowledge is the consideration that diligent protective measures by store operators will lead to the actual discovery of most hazards. Indeed, this consideration is the very basis for imposing the duty on the store operator to utilize adequate protective measures that lead to the actual discovery of dangerous conditions. The degree of vigilance, of course, must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store, and other such considerations.
* * * * * *
The ... appropriate inquiry is whether the store operator took reasonable steps to fulfill its twofold duty to discover and to correct dangerous conditions reasonably anticipated in its business activity."
Belinda Toussaint, a Loss Prevention Manager, and Scott Gates, an assistant manager, both employed at the involved K-Mart store, testified regarding the clean-up procedures and inspection measures followed by the defendant. Although the Mart Corporation filed answers to interrogatories indicating inspections were made down each aisle every hour on the hour, both employees testified to the contrary. Gates stated there was a general duty to tour the store during the day but that there was "no specific K-Mart policy charging someone to walk down any particular aisle at any designated time with any degree of frequency". Toussaint also stated that "we don't usually walk the floor every hour, but we do do it". Both further testified that there are no inspection logs nor documentation regarding clean-up procedures. This is corroborated by the fact that Toussaint left blank several questions *28 dealing with the time of inspection and cleaning of the aisle in question when filling out the accident report for the accident in question. Gates also stated that all It-Mart employees are trained to clean a mess and are instructed to remain with a spill until another employee is contacted to clean it up. However, Gates testified there is no employee charged with the responsibility of cleaning the store at any time during the day. Although Gates further testified that he inspected the aisle in question for spills 15 minutes prior to the accident, the record indicates that he merely walked perpendicular to the aisle in question glancing in the direction of the aisle and did not walk down that particular aisle.
We determine that, under the circumstances reflected by the record, defendant failed to carry its burden of introducing exculpatory evidence sufficient to negate the presumption that it was negligent in causing Rosalyn's slip and fall accident. Specifically, defendant failed to establish that its employees did not cause the hazard and/or that it exercised diligent protective measures that would lead to the actual discovery of most hazards. Brown v. Winn-Dixie Louisiana, Inc., supra; McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987). Therefore, defendant must respond in damages for the injuries suffered by Rosalyn.

QUANTUM
Since we reverse on the issue of liability, we will decide the issue of quantum. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
The record reflects that Rosalyn did not complain of injury or pain at the time of the accident. The day after the slip and fall, plaintiff was examined and treated by Dr. Henry J. Kaufman, a general surgeon, at the Walk-In Clinic North in Lafayette, Louisiana. Dr. Kaufman diagnosed Rosalyn as suffering from a mild sacroiliac joint strain and contusions to the left knee and hip. X-rays taken of plaintiff's spine, left hip and left knee were negative for fracture. Dr. Kaufman prescribed an anti-inflammatory analgesic drug and a muscle relaxant. Rosalyn was placed on crutches and instructed to return three days later. On Friday, June 14, 1985, Rosalyn returned to the Walk-In Clinic and was examined by Dr. Rick Jenkins, who continued the conservative treatment but also suggested a regime of physical therapy. Rosalyn stated that she was unable to undergo physical therapy because of her indigency. The record discloses that Rosalyn did not return to the Walk-In Clinic for treatment thereafter.
Rosalyn did not seek medical treatment from June 14, 1985 to April 1986. According to Rosalyn, during this period she secured relief from intermittent pain through bed rest and mild analgesics. On April 3, 1986, Rosalyn consulted Dr. Louis C. Blanda, Jr., an orthopaedic surgeon. On the basis of his clinical examination and a CT scan performed by a radiologist, Dr. Jeff Laborde, Dr. Blanda concluded that Rosalyn suffered from a bulging disc at the L-5 S-l level with nerve root compression. Dr. Blanda opined that it was within the realm of medical probability that Rosalyn's condition was caused by the slip and fall accident of June 10, 1985. Dr. Blanda saw Rosalyn again on July 14, 1986. On this occasion, his clinical examination revealed Rosalyn's condition to be essentially unchanged. Dr. Blanda testified as follows in regard to Rosalyn's condition and prognosis for recovery:
"... The disc itself is not going to be a normal disc ifwith time it willshe may get ups and downs with her symptoms where she's relatively pain-free for periods of time, but the overall abnormality is going to stay abnormal. In other words, it's not going to heal and become normal. It's lost its cushion effect, it's lost its support to the bone structure, and it's going to probably give her off and on symptoms probably for the rest of her life....
. . . . .
... Once a disc is injured, it undergoes degeneration. Physical therapy and all the other types of treatment are mainly supportive treatment. They help relieve the pain and reduce the symptoms, but it *29 won't make the disc normal and it won't put it back where it was, it's just going to continue to degenerate and eventually the problem become an arthritic type of disc....
. . . . .
It depends on the symptoms and the amount of neurologic deficit primarily. If she stays the way she is, then she'd probably be treated conservatively. If she gets worse where there is more nerve compression and more symptoms of partial paralysis in her leg due to that particular nerve root becoming nonfunctional, then she would probably bethen it would probably be more recommended that she have surgery or at least some type of evasive treatment. If she stays with mainly a pain problem that's intermittent and she can control it by altering her lifestyle a bit, then she won't need any type of major procedures done."
At defendant's request, Rosalyn was seen on one occasion by Dr. James Charles McDaniels. Dr. McDaniels, an orthopaedic surgeon, was initially asked to examine Rosalyn's lower back. However, on her visit, Rosalyn did not register any complaints of lower back pain. For this reason, Dr. McDaniels stated that he did not x-ray Rosalyn's lower back. Dr. McDaniels gave Rosalyn a general examination, paying particular attention to the left knee and lower thoracic areas. According to Dr. McDaniels, Rosalyn only complained of pain in these two areas. Examination and x-rays of these two areas were essentially normal. Aided by a densiometer printout of Rosalyn's CT scan, Dr. McDaniels disagreed with Dr. Blanda's diagnosis that Rosalyn had a disc problem at the L-5 S-l level. Dr. McDaniel concluded, on the basis of the densiometer printout, that the disc in question was normal. Dr. Blanda, in his testimony, discounted the use of a densiometer in the analysis of CT scans stating that he did not use them nor did other radiologists and orthopaedic surgeons heavily rely on them.
Only two medical experts testified in this case, the treating physician, Dr. Blanda, and Dr. McDaniel, who examined Rosalyn on one occasion. Their findings on examination and their conclusions with regard to Rosalyn's condition are diametrically opposed. Resolving conflicting medical opinions usually lies within the province of the trial judge and is not disturbed on appeal absent an abuse of discretion. In this case, the trial judge, although finding no liability on the part of K-Mart, commented in his reasons for judgment that he considered the testimony of Dr. McDaniel to be "more accurate and correct than Dr. Blanda". In our view, this statement by the trial judge is dicta and cannot be considered a finding which must be reviewed under the manifest error standard of appellate review. We have carefully reviewed the medical evidence in this case and discern no valid reason for departure from the well settled rule that the opinion of a treating physician is entitled to greater weight than that of a non-treating physician. Accordingly, we conclude that plaintiffs have established by a preponderance of the evidence that, as a result of her slip and fall, Rosalyn suffered a bulging disc at the L-5 S-l level, which condition is permanent and will cause her intermittent pain and some disability for an extended period of time. Under the circumstances present, we believe that an award in general damages in the amount of $25,000.00 is adequate. Plaintiff is entitled to an award for past medical expenses in the sum of $360.00, this being the only item of special damages supported by the record.
For the above and foregoing reasons, the judgment of the trial court is reversed. It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, James Thomas, Jr. and Brenda Thomas, on behalf of their minor child, Rosalyn Thomas, and against defendant, K-Mart Corporation, in the amount of $25,360.00 with legal interest from date of judicial demand until paid. Defendant-appellee is cast with all costs at the trial level and on appeal.
REVERSED AND RENDERED.
NOTES
[*] Judge G. William Swift, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Rosalyn denied that she was holding a broken bottle in her left hand. No other person at the scene corroborated the testimony of Mary Andrus in this regard.