522 So.2d 1350 (1988)
Robert L. RAYMOND and Carrie M. Raymond, Plaintiffs-Appellants,
v.
SAFEWAY STORES, INC., Defendant-Appellee.
No. 19506-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
*1351 Travis M. Holley & Associates by Scott E. McElroy, Bastrop, for plaintiffs-appellants.
Hayes, Harkey, Smith & Cascio by Charles S. Smith, Monroe, for defendant-appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a case for personal injuries from an alleged slip and fall. The jury found that the defendant grocery store was not negligent and the plaintiff appeals, arguing that the defendant did not exculpate itself from the legal presumption of negligence under the recent case of McCardie v. Wal-Mart Stores, 511 So.2d 1134 (La.1987). Finding that the evidence does not rebut the presumption, we reverse and render.

FACTS
The plaintiff, Mr. Raymond,[1] was an 82-year old gentleman who was blind in one eye and had a cataract in the other. On April 2, 1984, he entered the old Safeway Store in Bastrop to collect his wife, who had gone in while Mr. Raymond ran an errand at the Otasco next door. Looking for her, he walked down Safeway's produce aisle where an employee, Kelvin Hobbs, was restocking apples from boxes on a dolly. A bin displaying white grapes was only three or four feet away. Mr. Raymond was walking between the dolly and the grape bin when he suddenly slipped on something he had not seen. According to Mr. Raymond, he slipped and landed on his seat, also bumping his left shoulder against one of the stacked apple boxes; when he started to get up, Hobbs came and helped *1352 him to his feet. According to Hobbs, as soon as he noticed that Mr. Raymond was losing his balance, he rushed over and was able to catch him before he completely fell. After Hobbs had helped Mr. Raymond to his feet, he glanced at the floor and noticed a smashed white grape which he promptly wiped up. Mr. Raymond told the store manager, Mr. Tomboli, that his left arm was hurt, but he refused medical attention and left.
The next day, Mr. Raymond went to Dr. Chorette, who noted muscle spasms in the neck, left shoulder, lower back and buttocks. An X-ray revealed severe arthritis, especially in the lumbar area, that predated the accident, but Dr. Chorette thought the instant complaints were due to the slip and fall. He placed Mr. Raymond on a moderate dosage of Motrin. On May 7 Mr. Raymond was sent to the hospital for observation and therapy; he was discharged on May 11 with a prescription for a muscle relaxant. Mr. Raymond saw Dr. Chorette again in July 1984 for an unrelated knee injury but still complained of lower back pain. Mr. Raymond returned to Dr. Chorette about a week before trial for a re-evaluation. He was still suffering from pain in the neck, shoulders and lower back. Dr. Chorette admitted that the arthritis predated the incident, but believed the trauma of slipping and falling caused some aggravation. Mr. Raymond suffers with a 30-50% limitation of the lower back, but is otherwise in good health for a man his age.
Another physician, Dr. Tugwell, testified to numerous physical difficulties Mr. Raymond had experienced before this incident. In 1972 he had diagnosed a degenerative cervical disc, hypertrophic arthritis and a bilateral indirect inguinal hernia. Mr. Raymond was hospitalized in May 1972 for pain in the lower back, radiating to the legs. In 1975 he was hospitalized for chest pain radiating down the left arm. In 1976 he stepped in a hole and twisted his back; he was hospitalized for acute lumbosacral sprain and hypocarotosis of the neck. Dr. Tugwell admitted that Mr. Raymond had not reported any back or shoulder problems between 1976 and 1984, but explained that people with arthritis could go for long periods of time without any significant complaints. Dr. Tugwell also admitted that the fall could aggravate an arthritic condition, but stated that arthritis usually gets gradually worse anyway, consigning a patient to pain "off and on" as he exerts himself.
As noted, the jury found, in response to special interrogatories, that Safeway was not guilty of negligence by a preponderance of evidence. The subsequent questions were not reached. The trial judge signed judgment pursuant to the verdict, and Mr. Raymond has appealed.

DISCUSSION: SAFEWAY'S NEGLIGENCE
Appellant argues the jury's verdict was manifestly erroneous because the evidence did not show that Safeway exculpated itself from the legal presumption of negligence.
Prior to Kavlich v. Kramer, 315 So.2d 282 (La.1975) and Gonzales v. Winn-Dixie La., 326 So.2d 486 (La.1976), a tort victim injured by a fall caused by a foreign substance on a supermarket floor could recover only by proving that the store operator or his employee caused the hazard, or that the operator had actual or constructive knowledge of the hazard and failed to take reasonable steps to remedy the condition. In Kavlich, the supreme court held that once the victim proves that the substance caused him to slip, fall and sustain injuries, the store operator has the burden of going forward with evidence to exculpate itself from the presumption that it was negligent. The court reasoned that the victim was in no position to know how the substance came to rest on the floor or to prove that the employees were negligent. In Gonzales, the court outlined the considerations in determining the reasonableness of protective measures utilized by the store operators to avoid or minimize the risk of harm:
The circumstances that determine the reasonableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature *1353 of customer service, and the volume of business. 326 So.2d at 488.
In Brown v. Winn-Dixie La., 452 So.2d 685 (La.1984), the court summarized that under the new evidentiary burden, the store operator is required to prove that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers. 452 So.2d at 687.
The supreme court recently reaffirmed the defendant's twofold burden in a slip-and-fall case. McCardie v. Wal-Mart Stores, 511 So.2d 1134 (La.1987). We have therefore analyzed the instant case with a view to determining whether defendant Safeway met this burden.
As to Safeway's cleaning procedures, three witnesses testified: the store manager, Mr. Tomboli; the meat department manager, Mr. Atkins; and the produce department employee, Kelvin Hobbs. They tried to establish a routine of regularly scheduled sweepings supplemented with continuous spot checks and additional cleaning as needed. We admit that the sufficiency of this regimen would be a close question; the scheduled sweepings might distinguish Safeway's procedure from those disapproved in Ritchie v. S.S. Kresge Co., 505 So.2d 831 (La.App. 2d Cir.1987), writ denied 507 So.2d 227 (La.1987), and Brown v. Winn-Dixie La., supra. However, we need not reach a conclusion on this issue. "Merely proving adequate clean up procedures is insufficient to prove a spill was not caused by one of the store's own employees." McCardie, 511 So.2d at 1136.
As to proof that no Safeway employee caused the spillage, there was no evidence whatsoever. According to Mr. Tomboli, there are usually ten to 20 employees in the store; only three testified at trial and none of them denied creating the spill. This raises the presumption that any of seven to 17 other employees might have been responsible, or that the grapes were displayed in such a way that they were likely to slide out of the bin and onto the floor under normal conditions. We therefore find no proof that Safeway's employees did not create the hazard, and Safeway failed in the burden of proof. The jury's verdict to the contrary is plainly wrong. McCardie v. Wal-Mart Stores, supra.
In brief, Safeway argues two points to distinguish this case from McCardie. First it claims that the twofold burden imposed on the defendant in McCardie, especially as to cleaning procedures, was suitable for a dry goods store but would be unreasonably burdensome for a grocery store, whose merchandise is by nature more prone to spillage. However, the principle announced in McCardie had been previously applied in Brown v. Winn-Dixie La., supra, in which the defendant was a grocery store very much like Safeway. Moreover, under Gonzales v. Winn-Dixie La., supra, the type and volume of merchandise is a factor in assessing the reasonableness of the defendant's protective measures. We feel that a seller of merchandise such as grapes, which are round and highly prone to slip onto the floor and create a hazard, should be held to a higher standard of care than the seller of boxed, dry goods, which are not as likely to engender a hazard. This is simply because of the nature of the product sold. See Nettles v. Winn-Dixie La., 496 So.2d 1296 (La.App. 3d Cir.1986); Gonzales v. Winn-Dixie La., supra.
Safeway next urges that imposing a burden of proving that no employee created the hazard would be tremendously burdensome to a large retail seller with many employees. Safeway suggests that testimony from the employee who was in charge of the area where the spill occurred and from the store manager ought to suffice. However, this very line of reasoning was advanced by the defendant at the trial of McCardie as well as in this court when it was originally appealed. McCardie v. Wal-Mart Stores, 504 So.2d 111 (La.App. 2d Cir.1987). In fact, this court accepted the argument, ruling:
The employees who testified were those who either worked or had responsibilities in the area where the fall occurred. There was also testimony that *1354 the assistant manager and two other employees checked the entire area where the fall occurred for anything leaking out of a container on the counter and found nothing. From this testimony it is reasonable to infer that none of the employees created the hazardous situation. 504 So.2d at 113.
The supreme court, however, soundly rejected this line of reasoning. It replied that "[m]any of the employees who could have caused the spill were not asked to testify." 511 So.2d at 1136. The same is equally applicable to the instant case. As for the alleged burden of requiring a large employer to disprove the fault of dozens of employees, we recognize the difficulty but feel, like the supreme court, that it would be more suitably borne by the defendant than by the plaintiff. Kavlich v. Kramer, supra.
In sum, we are unable to distinguish the instant case from McCardie, supra. The jury's verdict finding Safeway free of negligence is erroneous and will be reversed.

DISCUSSION: COMPARATIVE NEGLIGENCE
Having determined that Safeway was guilty of fault, we must also consider whether the plaintiff was guilty of fault that was a causal factor of his injuries. LSA-C.C. art. 2323. Ordinarily the factfinder's allocation of fault is subject to the manifest error rule. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App. 2d Cir.1984). In the instant case the jury did not reach the issue of Mr. Raymond's negligence at all. We have therefore examined the evidence from the standpoint of making a fair and equitable allocation. LSA-C.C. P. art. 2164; Watson v. State Farm Fire & Cas., 469 So.2d 967 (La.1985). We note that Safeway specifically pleaded comparative negligence in its answer. R. p. 13.
Safeway alleged that Mr. Raymond failed to keep a proper lookout and watch where he was going. There is also the question of whether Mr. Raymond's very poor eyesight (at trial he could not see the white grape his attorney held up for view a few feet away) might have been a factor that should not be attributed to the defendant.
Mr. Raymond testified that once he was inside the store his main purpose was to look for his wife, so presumably he was looking ahead and around, but he also testified that he was able to watch his step. R. p. 114. In a grocery store, the customer's attention is usually seized by a number of things, such as the displays, the department signs, and the labels on the goods; the grocer understandably strives to make his wares as attractive as possible. Consequently the customer has to divide his attention between the displays and the floor in front of him. He is not expected to channel his vision directly upon the floor. Zeagler v. Dillard Dept. Stores, 521 So.2d 766 (La.App. 2d Cir.1988); Nettles v. Winn-Dixie La., supra; Batiste v. Joyce's Supermarket, 488 So.2d 1318 (La.App. 3d Cir.1986); Dulaney v. Travelers Ins. Co., 434 So.2d 578 (La.App. 1st Cir.1983). Mr. Raymond's alleged distraction in looking for his wife is not very different from the average customer's distraction in looking at groceries along the aisle as he walks. Mr. Raymond maintained a lookout at least as good as that maintained by the plaintiffs in Zeagler and Nettles, supra, and it was reasonable under the circumstances. His failure to scrutinize the floor in front of him in a supermarket is not negligence.
Mr. Raymond's poor vision is really of no moment under the circumstances. Kelvin Hobbs was working in the immediate area at the very time the incident occurred. He admitted he was on constant lookout because grapes are sometimes a problem due to spillage. He also stated he could see a white grape eight or nine feet away. However, despite his constant vigil and his good vision, Hobbs did not notice the grape until after Mr. Raymond had slipped; even then, he noticed not a round grape, but a smashed, wet residue on the floor. Under these circumstances, Mr. Raymond cannot be charged with duty to see the grape; his relative blindness was not a cause of the fall, when a person with good vision did not see the grape either. We also note that the small, light green *1355 seedless grape was not necessarily conspicuous on the light-tinted, brown-speckled floor. See Nettles v. Winn-Dixie La., supra. The incident would probably have occurred irrespective of Mr. Raymond's poor eyesight; thus we find that his impaired vision was not a cause-in-fact of the slip and fall.
Since Mr. Raymond did not keep an inadequate lookout and neither saw nor should have seen the hazard on the floor, we cannot allocate any fault to him. We therefore assign 100% of the fault to Safeway.

DISCUSSION: QUANTUM
The jury did not address the measure of Mr. Raymond's damages. However, the record concerning his injury and losses is adequate so we will make an award based on the standard of fairness in the premises. LSA-C.C.P. art. 2164; Lee v. Great Southwest Fire Ins. Co., 493 So. 2d 789 (La.App. 2d Cir.1986); Lindstrom v. Arnold, 421 So.2d 1178 (La.App. 2d Cir. 1982), writ denied 423 So.2d 1183 (La.1982).
At the time of the accident, Mr. Raymond was 82 years old. Since his retirement four years earlier from carpentry, maintenance and construction work, he had remained rather active. He kept a garden plot of 1½ acres, fished regularly and enjoyed hunting squirrels. He admitted some physical difficulties starting with an auto accident in 1967; he had experienced flare-ups in the lumbosacral area serious enough to require hospitalization in 1972 and 1976. The doctors then had noted "moderately severe hypertrophic arthritic changes" of the lumbar vertebrae, moderate scoliosis and "degenerative disc changes." Mr. Raymond had also been hospitalized on a few occasions for pneumonia. Judging from his description of his activities and the natural limitations of advancing age and degenerative arthritis, we can conclude that Mr. Raymond was in reasonably good, though not perfect health when this incident occurred.
The slip and fall caused him immediate, sharp pain for which he sought medical care the following day. He did not sustain any bruises, scrapes or cuts. After five weeks' time, he was still suffering enough to return to Dr. Chorette and be sent to the hospital, where a severe lumbosacral sprain was noted. By hospital records and Mr. Raymond's own admission, the analgesics and muscle relaxants did him considerable good. He was discharged on May 11 with only "mild discomfort." Although he complained of continued pain, he apparently did not return to Dr. Chorette until July 13, and that occasion was for an injury to his right knee.
By the time of trial, in April 1987, Mr. Raymond was still complaining of some pain in the neck, shoulders, lower back and buttocks. He testified that this keeps him from doing all sorts of things he could do before, and that he takes two aspirin three or four times a day for relief. Nevertheless, he has been able to tend some berry vines and keep a small garden, about 80' by 90', with tomatoes and greens. He can still dress himself, cook and drive; he still shops at Safeway. Notably, his trip to Dr. Chorette in July 1984 was for treatment of a knee he had injured using a garden tiller. These circumstances would suggest a fair degree of recovery.
We conclude that Mr. Raymond suffered a moderately severe lumbosacral sprain and pain in his upper back and arm as a result of the slip and fall in April 1984. This pain continued to a marked degree until his treatment at the hospital in May. There was still some pain afterward, but it had apparently abated enough by July that he could resume gardening. The residual pain and disability appears marginally greater than the norm for a man who had what Dr. Tugwell characterized as "severe arthritis." Under the circumstances, Mr. Raymond should be compensated for about six weeks of severe back sprain and then a few months of moderate pain, followed by a slight aggravation of a pre-existent, serious arthritic condition.
Because awards for pain and suffering are so subjective, reference to other reported cases of similar injuries can provide only broad guidelines. LSA-C.C. art. 1999; Reck v. Stevens, 373 So.2d 498 (La.1979). Certain cases cited by appellant reflect the *1356 upper range and encompass other elements of damage. For instance, the plaintiff in Samanie v. Bourg, 434 So.2d 149 (La.App. 5th Cir.1983), writ denied 435 So.2d 445 (La.1983), received $48,500 for cervical strain, aggravation of a disc condition and aggravation of osteoarthritis. The award also included recovery for fright and distress stemming from a violent auto accident, elements which have not been alleged here. The plaintiff in Lee v. Great Southwestern Fire Ins. Co., supra, received $30,000 for injuries resulting from a slip and fall, including a fractured sacrum. Neither Dr. Chorette nor Dr. Tugwell found a fracture to have resulted from Mr. Raymond's slip and fall. On the other hand, cases like Rosemond v. Diggs, 468 So.2d 652 (La.App. 4th Cir.1985), Harper v. Boudreaux, 496 So.2d 439 (La.App. 1st Cir.1986), and Lindsay v. Toys, 499 So.2d 462 (La.App. 2d Cir.1986), which represent the lower end of the scale, appear to involve plaintiffs who were not as inconvenienced by their pain as was Mr. Raymond. We conclude that a more moderate award of $12,000 will compensate for Mr. Raymond's pain and suffering. Medical damages were stipulated at $1,259.56. Judgment for the total will be entered.

CONCLUSION
For the reasons expressed, the trial court's judgment is reversed. We render judgment in favor of the plaintiff, Robert L. Raymond, and against the defendant, Safeway Stores, Incorporated, in the full sum of $13,259.56, together with legal interest thereon from date of judicial demand until paid, and for all costs of this proceeding, including the cost of appeal.
REVERSED AND RENDERED.
LINDSAY, J., concurs in the result.
NOTES
[1] Mrs. Raymond joined in the original petition as a plaintiff. According to the trial court's judgment, her claim for loss of consortium was dismissed by joint motion of counsel. It is not at issue on appeal.