ARMSTRONG, Judge.
The defendant, Schwegmann’s Giant Supermarkets, Inc. (“Schwegmann’s”), appeals from a judgment in favor of the plaintiff for injuries sustained as the result of a “slip and fall” accident in a Schweg- *1345 mann’s grocery store. We find that Schwegmann’s carried its burden to exculpate itself from the presumption that it was negligent and we reverse.
I.
Plaintiff-appellee, George Brown (“Brown”), entered a Schwegmann’s Supermarket on Gentilly Boulevard in New Orleans to look for his wife and daughter, who were shopping. As he entered the store, Brown passed through the “Creole Area”, a concession area where beverages, including a red punch, and food are served. While walking through the Creole area, Brown slipped on some red liquid and fell. Brown sued Schwegmann’s for injuries he sustained as a result of this slip and fall accident.
II.
Schwegmann’s has employees called “porterettes”. The Gentilly store had seven porterettes on duty on the date of the accident. Each porterette is assigned to inspect the floors in a particular area of the store (“a zone”) on a regular basis, and to clean up any observed spills. Vergie Taylor (“Taylor”), a porterette assigned to monitor and clean up “zone 1”, which included the Creole Area, testified that on the day of Brown’s accident she monitored her area from 8:10 a.m. to 5:37 p.m. There is some conflict in the evidence as to what time the accident occurred but no doubt that it occurred during Taylor’s shift. Taylor had a lunch break, but was replaced by another porterette during this time. During her shift Taylor would make continuous and repeated circles through zone 1, which would take a half hour to one hour to complete depending on how many spills she had to clean. Each time Taylor saw a spill, it was her job to sweep or mop it up. Immediately after completing each clean up, Taylor would enter the time and the location of the spill on a “zone sheet”, Defendant’s Exhibit 4. She also entered the procedure performed in each area on that sheet, e.g., sweeping, mopping, etc.
Taylor’s zone sheet for the date of Brown’s accident shows that she swept and/or mopped spills in the Creole Area at 8:29 a.m., 9:20 a.m., 10:29 a.m., 10:50 a.m., 11:20 a.m., 1:08 p.m.[1], 1:49 p.m., 2:23 p.m., 3:20 p.m., and 3:50 p.m. A review of the entire zone sheet does not indicate that clean-ups in the Creole Area occurred more frequently than in other areas within Taylor’s zone.
III.
The district court rendered judgment for Brown. In its reasons for judgment, the district court stated:
Defense witnesses included the Schwegmann’s porterette, Virgie Taylor, who described her duties and schedule. Granted the accuracy of her testimony, the dangerous condition nevertheless existed when plaintiff stepped into the area and fell. Hence, the clean-up efforts in that heavily traveled, food and drink vending area, in the Court’s opinion, were not reasonable or adequate under the circumstances.
The district court in effect held that, because a dangerous condition existed when Brown stepped into the Creole Area, Schwegmann’s was negligent. Of course, proof of an accident alone is not proof of negligence. Barcia v. Estate of Keil, 413 So.2d 241, 243 (La.App. 4th Cir.1982).
Brown proved that there was a foreign substance on the floor (red liquid) that caused him to fall and sustain an injury. The burden of proof then shifted to Schwegmann’s to prove that its employees did not cause the hazard, and that it exercised such a degree of care that its employees would have known under most circumstances of a hazard caused by customers. McCardie v. Wal-Mart Stores, Inc., *1346 511 So.2d 1134 (La.1987); Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984); Kavlich v. Kramer, 315 So.2d 282 (La.1975); Smith v. Winn-Dixie Stores of Louisiana, Inc., 389 So.2d 900 (La.App. 4th Cir.1980). In other words, the burden shifted to Schwegmann’s to prove that it exercised reasonable care to: 1) discover substances spilled on the floor, and 2) clean up the spilled substances. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486, 488 (La.1976); Dickerson v. Kroger, Inc., 509 So.2d 813 (La.App. 1st Cir.1987). To exculpate itself from the presumption that it was negligent, it was only necessary for Schwegmann’s to show that it exercised reasonable care. A store is not an insurer of the safety of its customer and the fact that there was a spill that caused a slip and fall does not, by itself, prove that the store failed to exercise due care. Smith v. Winn-Dixie Stores of Louisiana, Inc., 389 So.2d 900 (La.App. 4th Cir.1980); Barcia, supra.
Taylor’s testimony was believed by the district court. That testimony, along with the zone sheet, convinces us that Schweg-mann’s exercised reasonable care to detect and clean up spills within a reasonable time of their occurrence. It is enough if, as here, there is a system of reasonably frequent floor inspection and prompt clean up upon discovery of spills. Floor inspection and clean up were not done on a random or “as needed” basis.[2]
In holding Schwegmann’s precautions reasonable we find it important that 1) there was a staff of seven porterettes assigned full-time to floor inspection and clean up; 2) a porterette was always on duty in zone 1 with Taylor being replaced when she was on her lunch break; 3) Taylor and the other porterettes were systematically assigned to zones which would ensure that no area of the store would be neglected; and 4) Taylor and the other porterettes swept or mopped any spill as it was found. Of course, a reasonable system of inspection and clean up must not only be adopted; it must also be fully executed. Taylor’s testimony and the zone sheet show that the Schwegmann’s inspection and clean-up system actually was executed.
Our decision today may conflict somewhat with the opinion of the Louisiana Supreme Court in McCardie v. Wal-Mart Stores, Inc., supra. However, the 4-3 decision in McCardie appeared to deviate from well-settled negligence principles. In reaching its decision that the store was liable for injuries sustained by the plaintiff in a slip-and-fall, the court stated, “the defendant failed to prove that none of its employees caused the spill. Many of the employees who could have caused the spill were not asked to testify. Merely proving adequate clean up procedures is insufficient to prove a spill was not caused by one of the store’s own employees.” This language could be interpreted as placing a burden on the merchant to prove that “none of its employees caused the spill” or that none of its employees “who could have caused the spill” did so. Presumably, this burden could be met only by actually calling these employees as witnesses.
In 1988, the Louisiana Legislature enacted La.R.S. 9:2800.6 to address the liability of a merchant for injuries sustained by a person while on the premises of a merchant. Section C of that statute appears to overrule McCardie and states:
“In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created *1347 the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.”
Although La.R.S. 2800.6 is not to be applied retroactively, its enactment supports our belief that the holding in McCardie was a deviation from settled principles of law.
IV.
In sum, this case presents the situation of an accident occurring despite the defendant having exercised reasonable care. Consequently, the judgment of the district court is reversed, and we render judgment for Schwegmann’s dismissing Brown’s action.
REVERSED AND RENDERED.
SCHOTT, J., dissents.
WARD and WILLIAMS, JJ., concur.

. The zone sheet also reflects that the Creole Area was swept at 12:25 p.m. and 1:00 p.m. by "S. Robertson”, Taylor’s lunchtime replacement.

. We are not persuaded that the system adopted by Schwegmann’s was inadequate for the Creole Area because it was a "heavily traveled” food service area. First, there is no evidence that the Creole Area was more heavily traveled than the rest of the store. More importantly, perhaps, there is no evidence that spills were more frequent in the Creole Area than elsewhere. Indeed, defendant’s exhibit 4 shows that no more frequent spills occurred in the Creole Area than elsewhere in zone 1.