573 So.2d 1268 (1991)
Randy P. MANIERI
v.
NATIONAL TEA COMPANY, d/b/a National Canal Villere.
No. 90-CA-0719.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 1991.
*1269 John F. Greene, New Orleans, for plaintiff-appellee.
Roger J. Larue, Jr., Metairie, for defendant-appellant.
Before BARRY, WILLIAMS and PLOTKIN, JJ.
WILLIAMS, Judge.
Defendant, National Tea Company, appeals from a judgment against it and in favor of plaintiff, Randy P. Manieri, in the amount of $12,500.
In rendering its judgment, the trial court applied the evidentiary defense burden described in McCardie v. Wal-Mart Stores, *1270 511 So.2d 1134 (La.1987), rather than the burden of exculpation set forth in LSA-R.S. 9:2800.6 C, as enacted by Acts 1988, No. 714. Through this appeal, National claims the trial court erred in applying McCardie's burden of exculpation and claims it exculpated itself under the burden required by LSA-R.S. 9:2800.6 C. We agree. Section 2 of Acts 1988 No. 714, declares the Act shall become effective upon signature by the governor, which occurred on July 18, 1988, and declares it "shall apply to all cases tried on or after such date." Thus, as this case was tried after the statute's effective date and as National sustained the burden of exculpation required by LSA-R.S. 9:2800.6 C, we reverse the trial court's judgment and dismiss Manieri's suit.

FACTUAL AND PROCEDURAL HISTORY
Three witnesses testified at the November 14, 1989, bench trial. Manieri testified for his case-in-chief and on rebuttal, and Frank McEachern and Gary Ragusa testified on behalf of National. By stipulation, Manieri's medical records were entered into evidence.
Manieri testified that on March 9, 1988,[1] he was shopping for Kitchen Bouquet at the Canal Villere located at the intersection of Canal and Carrollton. He walked down aisle 3, looking at the top shelf. "The next thing [he] knew, [his] right leg slipped from underneath [him]. When it did, [he] turned backways to reach for the shelf and break his fall. [He] missed. [He] grabbed several bottles of barbecue sauce, fell down, and ... hit the back of [his] neck and low back ..." After collecting himself, he observed mustard on the floor and determined that substance must have caused his fall.
McEachern, Store Manager for National Canal Villere No. 15 located at 4001 Canal, testified that on the morning of March 9, 1988, he was notified by one of his trainees that a gentleman slipped and fell on aisle 3. When he arrived at aisle 3 to offer the customer assistance, he observed three or four "squirts of mustard" on the floor. Elaborating, McEachern described the "squirts" as spays coming from a squeeze bottle of mustard, with the streams going in different directions. He testified he checked all mustard containers and found every one dry.[2]
Describing National's inspection procedures, McEachern testified it was National's policy for its store's floors to be inspected every half hour by a manager walking the perimeter and up and down the aisles. Moreover, McEachern knew the floor of aisle 3 had been cleaned during the 10 minutes preceding Manieri's alleged fall because he had just dispatched an employee to clean a reported barbecue or catsup spill on that aisle.[3]
Ragusa, a produce clerk employed by National's Canal Villere No. 15 on the morning of Manieri's alleged fall, testified that when he heard about the accident, he was on his way back to the warehouse. He had just come from aisle 3, after cleaning a spill caused by a broken barbecue sauce bottle:
A. I was walking back towards the warehouse bringing the mop and bucket there. They called me for the same aisle. So, I thought it was the same thing they were talking about. I went up to the office. I said, "I already got it." They said no, they got another one. I went back over there to the exact same spot that I cleaned up. They had mustard and barbecue sauce.
Q. How long was it between the time you had finished cleaning up aisle three and the time you were called to come back to aisle three?

*1271 A. No more than four or five minutes.
Q. When you left aisle three, four to five minutes before, was there any mustard on the floor?
A. No.
Q. You're sure?
A. Positive.
Q. What did you do to clean up aisle three the first time?
A. They had a jar. The barbecue sauce fell off the shelf about six inches. I took a cardboard box and scooped up all the glass and the barbecue sauce, took a mop and mopped it up, and took a roll of paper towels and dried it all off. It was an area about this big (indicating).
After the parties rested, the court took the case under advisement. The judgment in favor of Manieri and against National, in the amount of $12,500 together with judicial interest from the date of demand until paid and all costs of the proceedings, was signed on January 25, 1990. The judgment was accompanied by written reasons which stated,
This Court finds that defendant failed to exculpate itself from the presumption that it was negligent pursuant to the case of McCardie v. Walmart Stores, 511 So.2d 1134 (La.1987). Although McCardie has come under attack, it was the law at the time of plaintiff's accident on March 9, 1988. LSA-R.S. 9:2800.6 C became effective on July 18, 1988 and is not retroactive, due to its substantive nature.
Thereafter, National moved for a new trial, but the motion was denied. National then filed this suspensive appeal.

LEGAL PRECEPTS
By Acts of 1988, No. 714, Section 1, our legislature enacted LSA-R.S. 9:2800.6, relative to evidentiary burdens of proof and exculpation in personal injury suits arising from hazardous conditions existing on a merchant's property. Section 2 of the Act directs it shall become effective upon the signature of the governor and shall apply to all cases tried on or after such date. The governor signed the Act on July 18, 1988.
LSA-R.S. 9:2800.6 provides that a merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage. LSA-R.S. 9:2800.6 A. In a suit for damages by a person who has suffered damages as a result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care owed to the person to keep the premises free of the hazardous conditions. LSA-R.S. 9:2800.6 B. In exculpating himself from liability, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job resonsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred. LSA-R.S. 9:2800.6 C.
Through the enactment of LSA-R.S. 9:2800.6, the judicially created evidentiary burden of exculpation described in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987), was superceded. Therefore, to achieve exculpation after the injured person makes a prima facie case of negligence against the merchant, the merchant is no longer required to adhere to McCardie's rule by showing that none of its employees caused the hazardous condition. See McCardie, 511 So.2d at 1136. Rather, [in addition to showing the adequacy of its cleanup procedures], the merchant "is only required to introduce the testimony of any employee shown to have actually created the hazardous condition." LSA-R.S. 9:2800.6 C.

*1272 APPLICATION OF LEGAL PRECEPTS TO THE FACTS
National correctly claims it need not meet McCardie's burden of exculpation. The trial court erred in applying its supplanted standards. Under the direction of its enabling act, LSA-R.S. 9:2800.6 became effective and applicable to all cases tried on or after July 18, 1988. Thus, as this case was tried November 14, 1989, National need only meet the requirements of LSA-R.S. 9:2800.6 C to exculpate itself from liability.
Manieri met the burden of proving his accident was caused by a hazardous condition. See LSA-R.S. 9:2800.6 B.[4] Thus, the burden shifted to National to exculpate itself from liability.
At trial none of National's employees were "shown to have actually created" the mustard spill. Therefore, to exculpate itself, National was only required to introduce the testimony of those employees or management personnel whose job responsibilities included inspection or cleanup of aisle 3. To accomplish this end, Store Manager McEachern testified describing the store's inspection policies and practices. He stated he dispatched an employee to clean aisle 3 of a barbecue sauce spill 10 minutes prior to Manieri's accident.
Employee Ragusa confirmed McEachern's account of the actual cleaning of aisle 3 within the minutes preceding Manieri's accident. Ragusa testified he cleaned the aisle of the reported barbecue sauce spill by mopping and drying its floor. He testified that 4 minutes later, while still carrying the mop and bucket, he was notified to clean aisle 3 of yet another spill. Upon returning to aisle 3 he found Manieri's mustard spill on "the exact same spot" he had just cleaned and dried.
National's duty to its patrons is to exercise reasonable care to keep its aisles, passageways and floors in a reasonably safe condition. The testimony of National's employee and manager reflect the store did not breach this duty. National showed its personnel excercised reasonable care to keep aisle 3 free of hazardous conditions like the mustard spill and National sustained its burden of exculpation.[5]
For the reasons stated, the judgment of the trial court is reversed and plaintiff's suit is dismissed. The parties are to bear their own costs.
REVERSED.
NOTES
[1] On direct examination, Manieri testified the accident occurred at 8:30 a.m.. However, on cross-examination, he attested that it occurred between 9:00 and 9:30 a.m.
[2] McEachern also testified that, as plaintiff walked up aisle 3 from the back of the store going towards the front, he passed the Kitchen Bouquet 6 feet before he came upon the alleged mustard spill.
[3] McEachern testified Eric Howser was dispatched to clean the spill. However, Ragusa testified the floor of aisle 3 was cleaned by him.
[4] The trial court's determination that Manieri's accident was caused by a hazardous condition on the merchant's premises, is reasonable in light of the evidence. As the determination is not clearly wrong, it may not be disturbed on appeal. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
[5] The manifest error standard is not applicable to the determination of whether National met its burden of exculpation because the trial court applied the wrong standard to determine negligence.