REID, Judge.
Suit'was filed by Albert Williams, Jr., against Monroe J. Wolfe, doing business as Monroe J. Wolfe Dredging Company, and against the Marquette Casualty Company, the insurer of said Monroe J. Wolfe, in the sum of $7,896.85. This total sum consists of $916.85 for the value of 27 fishing nets allegedly lost, $6,480.00 damages for loss of the expected catch, and $500.00 for expenses in searching for the alleged lost nets. The defendants, Monroe J. Wolfe, doing business as Monroe J. Wolfe Dredging Company, and his insurer, Marquette Casualty Company, filed an answer denying the claim of the plaintiff that Monroe J. Wolfe did in fact destroy any fishing nets belonging to the plaintiff and plead in the alternative that should the Court find that any of plaintiff’s nets were destroyed by the defendant and that the defendant was guilty of any negligence which was the proximate cause of the accident, that the plaintiff was guilty of contributory negligence which was the proximate cause of the accident, said contributory negligence consisting of the placing of the nets in the stream without proper markings, in improper places, and with improper insulation of the nets.
It appears from the evidence introduced on the trial that Monroe J. Wolfe, d/b/a Monroe J. Wolfe Dredging Company, defendant herein, was the owner of the dredge or barge which was being moved to Cross Bayou, Bee Bayou and Lake Murphy, by the method known as “tagging.” This method consisted of throwing a dragline bucket attached to the dredging machine on the front of the barge and drawing in the cable to1 bring the barge up to the point where the bucket was anchored. It is the contention of the plaintiff that this operation of the dredge boat or barge destroyed 27 hoop nets belonging to him.
The plaintiff produced various witnesses who testified that these bayous were used to fish by commercial fishermen and these fishermen marked their nets in various ways so as to be able to locate the nets and to serve as notice to other fishermen that nets had been placed in a particular place. Though the nets themselves were dropped to the bottom of the stream and were out of sight of the surface, these markings, which consisted of blazes on trees, tin cans, and in some instances flags, were visible to anyone navigating the bayous. However, these markings would be of no significance to anyone not familiar to the area and the practices of a fisherman. The plaintiff relies on the testimony of one Jesse Burns, who was in fact an employee of the defendant and had himself been a commercial fisherman in the area, to the effect that he recognized these various markings and informed the captain of the barge that there were fish nets in the bayou. It is upon this *765 alleged notice to the captain of the barge and the knowledge of Jesse Burns that plaintiff depends to establish the liability of the defendant, vicariously.
On June 6, 1963, the Judge in the Trial Court held for the defendants, and dismissed plaintiff’s suit at his cost. Formal judgment was read and signed on September 11, 1963. On September 4, 1963, the plaintiff moved for and secured an order of devolutive appeal and after various extensions of time the transcript and record were lodged before this Court. On February 10, 1965, a motion and order was signed by the Lower Court staying all further proceedings against the Marquette Casualty Company, the Marquette Casualty Company being in rehabilitation. At present Marquette Casualty Company is in liquidation, the rehabilitation efforts of the Louisiana Insurance Commissioner being unsuccessful.
In his written reasons for judgment the Trial Judge stated that although the plaintiff may have actually lost nets by virtue of the operation of the barge and dragline, the evidence introduced was insufficient to entitle him to a judgment, the plaintiff having failed to sustain the burden of proving his case by a preponderance of the evidence.
The attorney for the plaintiff apparently bases his appeal upon the alleged error of the Trial Court in finding as a fact that Mr. Bums did not testify that he knew the nets were in the bayous. In this regard the testimony of Mr. Burns is somewhat confusing. Apparently what Mr. Burns is saying is that based upon his previous experience and knowledge he himself was satisfied that the nets were in the water. However, upon questioning by the Trial Judge he was forced to admit that it was indeed possible that while the nets had been there, they may have been removed. His testimony is as follows:
“Q. And I believe you testified you knew there were fishing nets in there—
A. Yes, sir, but they wasn’t showing—
Q. —but you didn’t have to touch them one way or the other?
A. They wasn’t showing.
BY THE COURT:
Q. What did you say, Mr. Bums, they were not showing?
A. No, sir.
BY MR. COBB:
Q. But I say you still knew they were there ?
A. I knew that they had nets in there, because they had flags and they had blazes on trees.
Q. When you say they weren’t showing, you mean that it’s a type of net that sits on the bottom, right?
A. They was dropped on the bottom, that’s correct.
Q. But they generally have either a cut in the trees to show—
A. Some of them put a knot; some of them put a little blaze; and some of them put a flag.
Q. Just a piece of rag on a stick?
A. Of course, you don’t know whether there’s a net there or not unless you drag it up, you see.
BY THE COURT:
Q. Just a moment, Mr. Cobb — you mean that’s the way the fishermen mark where their nets are?
A. Yes, sir, most of them do.
Q. Now, it could be possible there would be no nets there, you wouldn’t know whether there were nets there unless you’d drag it up. Now, he *766 may have had a net there, and he may have moved it, is that right ?
A. That’s correct.
Q. The thing I’m trying to get at is that you knew, of course, that there were these hoop nets, but you couldn’t see them?
A. No, sir, I couldn’t see them.”
The employees of the defendant, W. J. Couvillion, the barge captain, and H. J. Arnaud, the dredge operator, contradicted the testimony of Mr. Burns. They stated they had no knowledge whatever of the existence of the fishing nets in the vicinity of the bayous and further that Mr. Burns had •not in fact informed them of his belief that the nets were there.
The judgment of the Trial Judge was bas-ed in part upon his finding that at no time •did Jesse Burns, the employee of Monroe J. Wolfe, doing business as Monroe J. Wolfe 'Dredging Company, actually testify that "he knew the nets to be in the bayous.
It is indeed strange that the plaintiff would base his appeal solely upon such a -narrow point. Even conceding, that, as •the plaintiff claims, the record conclusively shows that Mr. Burns did testify that he lenew the nets be in the bayous, the effect would be nothing more than to establish knowledge on the part of the defendant’s •employee, thereby establishing vicarious liability. However, in view of the finding ■of the Trial Court that the plaintiff had failed to prove his case by preponderance of the evidence, the question of knowledge is moot if such finding is upheld.
 It is well established that only in the case of apparent error should the Court •of Appeal overrule the finding of fact on the part of the Trial Court. In this case the record discloses no such error in the judgment of the Trial Court that the evidence introduced by the plaintiff was insufficient to sustain the burden of proving by preponderance of the evidence that he had in fact lost his fish nets due to the operation of the dredge and barge owned by the defendant, Monroe J. Wolfe.
It has been held many times in this State that probabilities, surmises, speculations and conjectures cannot be accepted as sufficient grounds to justify recovery on the part of the plaintiff who is charged with the burden of proof. Pinkney v. Cahn Investment Co., La.App., 32 So.2d 345 (1947).
The record discloses nothing which could establish the alleged loss of the plaintiff’s fishing nets to be more than a probability, surmise, speculation or conjecture. The testimony establishes that the nets were approximately four feet in diameter by eighteen feet in length and that they were allowed to rest on the bottom of the bayou. Gross Bayou was estimated to have a depth of between fifteen and eighteen feet The width was estimated to be between sixty and eighty-five feet by the various witnesses. The dimensions of the barge were thirty-five feet in width by one hundred fifty feet in length. From this it is readily apparent that when the barge was navigating in the middle of the bayou some fifteen to twenty feet would be left on either side. Also, with the nets resting on the bottom a minimum of some eleven feet of clearance to the surface of the bayou would be left and while there was no evidence admitted as to the amount of water drawn by the barge, it is indeed unlikely that this would amount to eleven feet. The dredge bucket itself could obviously destroy a net lying on the bottom if it were to fall on it, but in view of the vast dimension of Cross Bayou in relation to both the net and the bucket, such an occurrence could be based solely on a relatively small probability. Coupled with this is the fact that no damaged or destroyed nets were introduced into evidence, despite the fact that plaintiff had recovered some. It was his testimony that while he could not recover most of the nets he alleged to have lost, he had himself repaired those that had been damaged and recovered. It is, therefore, apparent that while it is indeed possible that some of the nets of the plaintiff were *767 destroyed by the dredge or barge, such loss was not established to any legal certainty. No definitive evidence as to any loss on the part of the plaintiff was introduced. The judgment of the Trial Court, therefore, must be affirmed.
Affirmed.