CRAIN, Judge.
This appeal is from a judgment of the trial court which dismissed plaintiff’s suit seeking rental and replacement costs of cylinders belonging to plaintiff, delivered to and allegedly unreturned by defendant. Plaintiff appealed.
This is a suit termed a suit on open account arising from the sale of oxygen and acetylene by plaintiff, Lincoln Big Three, Inc. (Lincoln), to the defendant, W.G. “Bill” Thomas, B.A. Favret and B.T. Oilfield Services, Inc. (B.T.). Plaintiff stipulated the dismissal of the individual defendants and proceeded only against the corporation, B.T.
Lincoln is in the business of selling welding supplies, and B.T. was engaged in the fabrication business requiring the use of welding supplies- including oxygen and acetylene gas. The gases were sold in cylinders owned by Lincoln. The cylinders were rented to the customer with Lincoln retaining ownership. The dispute giving rise to this lawsuit concerns cylinders which Lincoln alleges were not returned and for which B.T. should have to pay *173 under the terms of the contract between the parties.
Until May of 1977, B.T. was engaged in the offshore and onshore oilfield fabrication business which was operated from various locations. In the course of business B.T. would request Lincoln to supply gases contained in cylinders. Lincoln would deliver the number of cylinders requested at designated places. If the filled cylinders were replacements for empty cylinders, the empty cylinders were picked up by Lincoln at the request of B.T. Lincoln would also pick up empty cylinders which were not replacement cylinders at the request of B.T. B.T. paid for the gas it used out of the cylinders and paid a daily rental for use of the cylinders from the day of delivery to the day Lincoln was called to pick up the cylinders. This was standard business practice, as well as the custom in the fabrication industry. In many cases cylinders were delivered and picked up at places other than the user’s place of business. Lincoln had specially designed trucks for delivery and pick-up of its cylinders and had special forms and procedures established for recording pick-up of its cylinders.
B.T. alleges that it notified Lincoln that it was shutting down its fabrication business, that it would not need any refilled cylinders, and that all the cylinders should be picked up by Lincoln. B.T. was never notified that the cylinders were not picked up by Lincoln as instructed until it received an invoice from Lincoln for the rental of forty-two cylinders. B.T. objected to the invoice and notified Lincoln that there were no cylinders in B.T.’s possession and that it had instructed Lincoln to pick up all of the cylinders it had delivered. However, Lincoln continuously invoiced B.T. for the rental of forty-two cylinders.
Lincoln subsequently filed suit against B.T. alleging B.T. owed the sum of $1,712.20 for the rental of forty-two cylinders for a IV2 year period. Lincoln also alleged in its petition that B.T. was responsible for the replacement of forty-two cylinders at a cost of $6,767.04. Attached to Lincoln’s petition was an affidavit from Ronald Wayne Shaffer, a representative of Lincoln, stating that he was familiar with Lincoln’s books and records and that the records showed that forty-two cylinders delivered to B.T. had not been picked up by Lincoln. Despite the insistence by B.T. that Lincoln’s records were in error, Lincoln maintained its records were accurate and the debt owed by B.T. for the rental and replacement of forty-two cylinders was correct.
In preparation for trial it was discovered by Lincoln that B.T. had not been given credit for some cylinders which had been returned. At trial Lincolh introduced business records which allegedly indicated that only nineteen cylinders were unaccounted for instead of forty-two. The dollar amount sued for was reduced to $2,975.93 for replacement of unreturned cylinders and $916.01 for rental on unreturned cylinders.
After trial on the merits, the trial judge in oral reasons held that there probably had been a loss by Lincoln due to unre-turned cylinders but that he could not attribute any of the loss to B.T., and additionally the evidence was insufficient to establish the value or number of missing cylinders. Judgment was then signed dismissing Lincoln’s suit. Lincoln claims on appeal that this was error. We affirm.
Lincoln contends that the responsibility of B.T. for the missing cylinders was established from Lincoln’s business records as testified to by Mr. Ronald Shaffer. Lincoln contends that its business records establish that B.T. owes rental and replacement costs on nineteen cylinders. Lincoln argues that B.T., has no records of the number of cylinders received or the number of cylinders returned to Lincoln and therefore under the terms of the contract is liable for the rental of the cylinders.
The shipping orders (the contract between the parties) provided that: “(2) Customer shall and must return each cylinder and container, and all fittings and attachments thereto, when empty, safely at customer’s cost and expense, to the distribut *174 ing station of seller from which the same were shipped originally.”
The standard business practice in the fabrication industry, which was adhered to by Lincoln and B.T., is that the user notifies the seller of the amount of gas it needs and the place for the gas to be delivered. The seller then delivers the gas in the cylinders to the place designated by the user and at the same time picks up any empty cylinders. This establishes a course of dealing. La.R.S. 10:1-205(3).
A course of dealing is allowed to give particular meaning to and supplement or qualify terms of an agreement. The course of dealing between Lincoln and B.T. qualifies the terms of the contract to allow the distributing station (place where cylinders are to be picked up) to be the place designated by the user (B.T.). Accordingly, we hold that B.T. has not breached any written obligation owed to Lincoln.
There remains the issue of whether or not the business records introduced by Lincoln sufficiently establish responsibility for the allegedly missing cylinders. The trial judge was not convinced by Lincoln’s business records that B.T. is responsible. We find no manifest error in this conclusion.
Mr. Shaffer, credit manager for Lincoln, testified that the procedure for picking up cylinders for return is for the truck driver for Lincoln to go to the designated dock and pick up the empty cylinders. More than one Lincoln customer would use the same dock. At the dock, the truck driver requires someone to sign a cylinder receipt form. The form, however, does not signify which of Lincoln’s customers using the same dock are credited for the returned cylinders. The only evidence of which returned cylinders should have been credited to a particular customer’s account would be the testimony of the particular truck driver who serviced the dock used by B.T.
As in any civil case, plaintiff has the burden of proving each and every essential element of its claim by a preponderance of the evidence. Meyer v. State, Dept. of Public Safety License Control and Driver Improvement Div., 312 So.2d 289 (La.1975). The identity of the customer responsible for the missing cylinders is an essential element to Lincoln’s claim. Absent the truck driver’s testimony, we find that the trial court was not manifestly erroneous in finding that Lincoln had failed to establish by a preponderance of the evidence the responsibility of B.T. for the missing cylinders. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Therefore, Lincoln’s first assignment of error is without merit.
Lincoln argues the court erred when it refused to apply the account rendered rule that failure to object within a reasonable time to an account rendered is regarded as an admission of its correctness by the party charged.
William G. Thomas, Sr., president of B.T., testified that after he received the invoices from Lincoln showing B.T. still possessed forty-two cylinders, he called Lincoln on several occasions informing Lincoln that all cylinders had been returned. Although the trial judge acknowledged that there were no letters of protest written by Thomas to document the denial of this account, he found that B.T. did in fact object to the invoices. We find no manifest error.
For the foregoing reasons, we affirm the judgment of the trial court. The trial judge assessed costs equally between the parties. Since neither party assigned as error the assessment of costs, we affirm the costs incurred at the trial level. However, we assess all appeal costs to the appellant.
Affirmed.