594 So.2d 557 (1992)
Linda DAVIS, Plaintiff-Appellee,
v.
WAL-MART, INC., Defendant-Appellant.
No. 90-766.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
Rehearing Denied March 12, 1992.
*558 Marcantel, Marcantal & Wall, D. Keith Wall, Jennings, for plaintiff-appellee.
Scofield, Gerard, Veron, Hoskins & Soileau, Rudie R. Soileau, Jr., Lake Charles, for defendant-appellant.
Before GUIDRY, FORET and LABORDE, JJ.
GUIDRY, Judge.
Defendant, Wal-Mart, Incorporated (hereafter Wal-Mart), appeals a judgment of the trial court finding it 100% at fault in the slip and fall of plaintiff, Linda Davis, and awarding her $75,000 in total damages plus costs.
Plaintiff, Linda Davis, alleged she slipped and fell in a "glob" of clear gel in the bicycle aisle of the Jennings Wal-Mart store on June 21, 1986. Ms. Davis, who was permanently and totally disabled as a result of six prior back surgeries before the alleged fall, claimed the fall aggravated her preexisting back problems and further caused a disc problem in her neck which subsequently required surgery.
Wal-Mart disputed her alleged fall, the aggravation of her preexisting medical problems and the relationship of her subsequent neck surgery to any incident on June 21, 1986.
The case was tried to a jury on February 12-14, 1990. The jury returned the following verdict sheet:
"1. Did Linda Davis sustain a fall on the premises of Wal-Mart on or about June
 21, 1986?
 Yes X No _________
2. Was there any fault on the part of defendant, Wal-Mart, which was a legal
 cause of the accident?
 Yes X No _________
3. Was there any fault on the part of the plaintiff, Linda Davis, which was a legal
 cause of the accident?
 Yes X No _________

4. In what percentages do you find that the fault, if any, of the following parties
 contributed to the accident?
 Defendant, Wal-Mart: 20%
 _________
 Plaintiff, Linda Davis: 80%
 _________
 Total 100%
 _________

*559
5. What amount in dollars and cents will compensate plaintiff, LINDA DAVIS,
 for her injuries and losses as a result of the accident?
Medical expenses, past, present, and future: $100,000.00
 ____________
Past, present, and future pain, suffering, mental anguish, and permanent
disability: $ 50,000.00
 ____________
Loss of enjoyment of life, past, present, and future: $ 25,000.00"
 ____________

The trial judge rendered judgment in accordance with the jury verdict, setting expert fees and assessing each side with 50% of costs. Both plaintiff and defendant filed motions for judgment notwithstanding the verdict and, alternatively, for a new trial.
Plaintiff contended that her being found at fault and the division of costs were erroneous. Defendant argued that Ms. Davis had failed to prove any medical expenses and that the award for "loss of enjoyment of life, past, present and future" was redundant in light of the award for "past, present and future pain, suffering, mental anguish, and permanent disability" and prayed for the deletion of these items. In the alternative, defendant sought a new trial on all issues.
On March 20, 1990, the trial judge rendered judgment notwithstanding the verdict granting the relief plaintiff sought, part of the relief defendant sought and denying a new trial. That judgment found Wal-Mart to be 100% at fault and cast defendant for all costs. At the same time, it deleted the $100,000 awarded plaintiff for medical expenses. Defendant then timely perfected this appeal. Plaintiff has neither appealed nor answered the appeal.

PLAINTIFF'S FALL AND MEDICAL EXPENSES
Plaintiff claims that on June 21, 1986, she, her daughter, grandchild and mother went to the Jennings Wal-Mart to have photographs taken of the grandchild. While Ms. Davis' daughter and grandchild waited in line for photographs, plaintiff and her mother moved toward the toy department. As they approached the aisle where bicycles were displayed, Ms. Davis' mother turned from the main aisle, called "Action Alley", into a side aisle. Ms. Davis continued down the main aisle to the bicycle aisle where she turned to inspect the bicycles on display. The first inconsistency in the evidence occurs at this point. Ms. Davis claimed that the bicycles were on her left and shelving was on her right, while former Wal-Mart employees who worked at the store during June 1986 testified that the bicycles would have been on plaintiff's right and the shelves on her left.
In any event, plaintiff claims that after taking two or three steps down the bicycle aisle, her right foot slipped in a clear "gooy" substance causing her feet to go out from under her. According to plaintiff, she fell backwards and towards the right striking the lower shelf and floor with her right hip and buttock. Diane Watson, a former Wal-Mart employee who was personally acquainted with Ms. Davis, confirmed that on the day of the alleged incident, plaintiff sought her out and stated that she (plaintiff) had "slipped" in the bicycle aisle.
No one witnessed plaintiff's alleged slip and fall. Ms. Davis' mother, who was one or two aisles away, testified that she heard plaintiff scream and that, upon arriving in the bicycle aisle, saw plaintiff in the process of getting up.
Diane Watson, who was employed as a cashier at the time of plaintiff's accident, stated that, upon receiving Ms. Davis' report, she advised her to report the incident to a manager at the service desk. Brenda LeBlanc, who also has since left the employ of Wal-Mart, was working at the service desk that day as check-out supervisor. As none of the assistant managers nor the *560 store manager were available when Ms. Davis approached the service desk, Ms. LeBlanc attempted to take a report from plaintiff. According to Ms. LeBlanc, plaintiff handed her an empty cardboard container and stated that she had slipped and fallen in a substance which came from a tube packaged in the cardboard. Ms. LeBlanc further stated that she asked plaintiff to remain and make a report to one of the assistant managers, but Ms. Davis declined to do so because she was in a hurry. Additionally, Ms. LeBlanc related that she had to follow plaintiff out into the parking lot in order to get her name and address. Ms. Davis, on the other hand, testified that after reporting her fall to Ms. LeBlanc, she returned to where her daughter and grandchild were waiting in the line for photographs. Plaintiff stated that she told her daughter, Renee, that she was in pain and would wait for everyone in the car.
The testimony is likewise inconsistent as to the presence and/or nature of the substance on the floor. Plaintiff and her mother testified to a two to three inch "glob" of clear gel on the floor. Don Owen, manager of the Jennings Wal-Mart, stated that after being informed of the accident, he went to the bicycle aisle where he cleaned up a one to one and one-half inch spot of "Fix-A-Flat" from the floor. On the other hand, Diane Watson, who plaintiff claims was the first person she notified of the incident, testified that she followed plaintiff back to the location of the alleged fall, but saw nothing on the floor. Both Brenda LeBlanc and Nancy Berg, the assistant manager summoned by Ms. LeBlanc after plaintiff reported her fall, testified that they went to the bicycle aisle and found nothing on the floor. Plaintiff attempted to reconcile the difference in testimony by hypothesizing that Owen must have cleaned up the "Fix-A-Flat" before Watson, LeBlanc and Berg inspected the area. However, this hypothesis is weakened by the testimony of Ms. LeBlanc who stated that Owen was out of the store when plaintiff reported her fall.
Concerning plaintiff's alleged injury, she testified that she was in immediate pain after the fall and that she has not improved since. She also claimed that beginning in December 1986, she began experiencing neck pain which ultimately resulted in neck surgery in September 1987. Plaintiff denied both previous neck injury or any subsequent injury to her neck.
The evidence in the record is likewise inconsistent in regard to the extent and nature of plaintiff's alleged injury. The record reflects that plaintiff had numerous complaints of neck pain before June 1986, specifically in the years 1983 and 1984. Ms. Davis had serious medical problems and an extensive medical history prior to June 1986. She had undergone approximately six back surgeries and was considered totally and permanently disabled by her treating physician, Dr. Bernauer.
Dr. Bernauer testified that he had been treating plaintiff continuously for the past eleven years and that he had done all of her surgeries except two, which were performed by Dr. Gunderson, his former partner. Dr. Bernauer further testified that, as of June 1986, he was seeing plaintiff no less than monthly for continued complaints of back pain and that he had seen Ms. Davis twice in both April and May of 1986. Dr. Bernauer's records note no complaint of neck pain by Ms. Davis in June of 1986. However, Dr. Bernauer's records make reference to a serious fall by plaintiff in her kitchen which occurred in September 1986. According to Dr. Bernauer, plaintiff made no complaint to him of neck pain until June of 1987.
On appeal, Wal-Mart assigns three specifications of error:
1. The trial court erred in refusing to apply La.R.S. 9:2800.6 (Act 714 of 1988, effective July 18, 1988) at the trial of this action, applying instead the McCardie criteria for recovery in a slip-fall case recognized in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987).
2. The trial court erred in failing to grant a new trial in this action on the basis of improprieties occurring during the trial of this action and a damage award unsupported by proper evidence.

*561 3. The trial court erred in presenting the jury with repetitive interrogatories for the assessment of general damages.
In connection with the three assignments of error, defendant raises seven issues. Because of our ruling on the first specification of error, we need not consider any other assignments or issues raised by appellant.
In McCardie, supra, the Louisiana Supreme Court reiterated the criteria it announced in Brown v. Winn-Dixie Louisiana, Inc., infra, a plaintiff must meet in order to recover in a slip and fall case, stating:
"In Kavlich v. Kramer, 315 So.2d 282 (La.1975), this court held that after a plaintiff proves there was a foreign substance on a store's floor (the floor of a self-service convenience store) that caused the plaintiff to fall and sustain an injury, the burden of proof shifts to the owner of the store to exculpate itself from the presumption that it was negligent. The result of this shift in the burden of proof is to relieve the plaintiff of his burden to show the defendant's actual or constructive knowledge of the spill. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984).
In Brown, supra at 687, this court held: `Under the new evidentiary burden, the store operator is required to prove that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers.'"
La.R.S. 9:2800.6, as enacted by Acts 1988, No. 714, was passed in response to the Supreme Court's ruling in McCardie, supra, and changed both the burden of proof a plaintiff had to carry and the burden placed on a merchant to exculpate himself from liability in slip and fall cases. That statute read as follows:
"§ 2800.6. Liability of a merchant for injuries sustained by a person while on the premises of the merchant
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
Section 2. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana and shall apply to all cases tried on or after such date." (Emphasis ours)
The Act was signed by the Governor and became effective July 18, 1988.[1] Accordingly, *562 any jury instructions pursuant to the McCardie/Brown standard were erroneous and prejudicial to defendant.
We note that under La.R.S. 9:2800.6 (1988), a merchant "need not introduce the testimony of every employee ... or any particular proportion thereof ...". The merchant has to do no more than to introduce testimony from "... any employee shown [by the plaintiff] to have actually created the hazardous condition" and those employees (to include management personnel) who had inspection and/or cleanup responsibility in the area of the accident.
In examining the record, we find that both the plaintiff's closing argument and the trial judge's jury instructions were not in accord with R.S. 9:2800.6 (Act 714 of 1988). The trial court instructed the jury as follows:
"Once a plaintiff proves that she slipped and fell in a store because of a foreign substance on the floor, the burden of proof shifts to the owner of the store to exculpate itself from the presumption that it was negligent. The store owner is required to prove by a preponderance of the evidence that its employees did not cause the hazard and that it exercised such a degree of care that it would have known under most circumstances of a hazard caused by its customers." (Emphasis ours)
Under 9:2800.6, in effect when the instant suit was tried, in order to exculpate itself from liability, the defendant was not required to prove that its employees did not cause the hazard. Rather, the defendant was only required to "introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred". In this case, there is no evidence that a Wal-Mart employee actually created the hazardous condition which allegedly caused plaintiff's injury.
In the case at bar, as in Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975), the jury could not apply one of the most important legal principles governing the outcome of the case (La.R.S. 9:2800.6) because it was not part of the trial judge's charge to them. Further, the principle which they were given to apply, as well as being erroneous, placed a more onerous burden on defendant in order to exculpate itself from liability.
*563 In Gonzales, supra, the Louisiana Supreme Court stated:
"... [I]n the trial of the case, there could hardly have been any more important legal principle for the consideration of the jury than that defendant's failure to see what he could have seen by the exercise of due diligence does not absolve him from liability. Indeed, this is the very principle of law which the jury was required to apply to whatever facts were established by the evidence. But the jury could not have applied that principle to the facts because it was not a part of the judge's charge to them. Since the jury verdict was not based upon or guided by an essential and correct legal principle, the Court of Appeal properly decided to give no weight to the judgment of the trial court which implemented the jury verdict.
. . . . .
While the trial court remains the original forum for resolving factual and legal issues, the Louisiana Constitution expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. Accordingly, appellate courts render judgments on the merits when the trial court has made a consequential but erroneous ruling on the exclusion or admission of evidence. Builliard v. New Orleans Terminal Co., 185 La. 924, 171 So. 78 (1936); Baker v. D.H. Holmes Co., Ltd., 285 So.2d 282 (La.App. 4th Cir.1973); Broussard v. State Farm Mutual Automobile Ins. Co., 188 So.2d 111 (La.App. 3rd Cir.1966), writ denied, 249 La. 713, 190 So.2d 233. Likewise, when an appellate court has all the facts before it, a trial judge's erroneous instruction to the jury does not warrant a remand. Dixon v. Copeland, 289 So.2d 261 (La.App. 1st Cir.1973); Clay-Dutton, Inc. v. Plantation Nursing Home, 239 So.2d 442 (La.App. 4th Cir. 1970); Barreca v. United States Fire Insurance Co., 182 So.2d 138 (La.App. 4th Cir.1966); Duet v. Montagnet, 169 So.2d 561 (La.App. 4th Cir.1964)."
Accordingly, as all the facts in the case are before us, we will exercise our constitutional authority to "render judgment on the merits". See Gonzales, supra; La.C.C.P. art. 2164; and, Bossier v. De Soto General Hospital, 442 So.2d 485 (La.App. 2d Cir. 1983), writ denied, 443 So.2d 1122 (La. 1984).
In considering the record, we examine same "de novo", unrestrained by the tenets ordinarily applicable to appellate review of trial court decisions.

DEFENDANT'S CLEAN-UP AND SAFETY PROCEDURES
Testimony at trial established that in addition to normal morning and evening (opening and closing) clean-up measures and spot clean-ups, Wal-Mart had three other programs/procedures aimed at store cleanliness and customer safety: a Safety Committee, a Zone Defense program and the Safety Sweep program.
The Safety Committee consisted of a number of associates who would gather weekly to walk through the entire store in an effort to spot any potential hazards. Any observed problems would be reported to management for corrective action.
Zone Defense was "called" by management two to four times per day, depending on traffic in the store. Upon hearing the call for Zone Defense, associates would check their respective areas for any merchandise or foreign substances on the floor or any other potentially unsafe condition.
The Safety Sweep program consisted of two or three specified employees who, in addition to other duties such as stocking shelves, were designated to sweep the aisles of the store several times a day. Although Don Owen, the store manager, maintained that this program worked well, he readily admitted that the documentation (Safety Sweep cards) of the program was such a problem that the use of Safety Sweep cards was abolished. All management or ex-management personnel who testified agreed that the lack of documentation of safety sweeps in no way indicated that the sweeps were not done as planned.
Both the Zone Defense and Safety Sweep programs were routinely conducted during *564 normal store operating hours to supplement the opening and closing clean up procedures. Both programs required specific employees to deter from other tasks and to devote their exclusive attention to the floor in their assigned area(s).
Further, employees were to constantly look for spills or other unsafe conditions on the floor as they checked, marked and/or put up stock.
In addition to these routine safety measures, Wal-Mart also had a "spill" policy whereby any employee responsible for or discovering a spill of any type at any location in the store was to remain at the spill site until it was cleaned up to guard against anyone slipping in the spill. In order to encourage employees to participate aggressively in the spill policy program, it was tied to the store's profit sharing program.

OPINION
Although the issue is close, considering the record as a whole, we conclude that plaintiff proved by a preponderance of the evidence that she slipped and fell because of a foreign substance on the floor in the bicycle aisle of the Jennings Wal-Mart in June 1986. However, plaintiff offered no proof to show that a Wal-Mart employee actually created the hazardous condition.
Under the circumstances, the burden of proof mandated by R.S. 2800.6 (1988), in order for Wal-Mart to exculpate itself from liability, was to prove that it exercised reasonable care and exerted reasonable efforts in its cleanup/maintenance procedures such that under most circumstances it would have known and been able to correct any hazard caused by its customers.
We conclude that, considering all the programs instituted by Wal-Mart, two over-all cleanups outside of business hours, Zone Defense, Safety Sweep, and the "spill" policy tied to the store's bonus program, defendant's efforts in the area of customer safety were more than "reasonable" and thus adequate to exculpate it from any liability in connection with plaintiff's accident.
Further, in our view, the record fails to establish, by a preponderance of the evidence, that plaintiff suffered any injury as a result of her alleged fall on June 23, 1986.
Insofar as plaintiff's physical complaints are concerned, we find her lacking in credibility. She denied any previous neck problems and denied a fall subsequent to her fall at Wal-Mart in June 1986. Evidence admitted at trial proved otherwise on both issues.
Further, the medical records from plaintiff's former and present physicians and from the various hospitals where she obtained treatment speak for themselves. They show no marked increase in doctor's visits or hospitalizations between June 23, 1986, the date of her alleged fall, and September 4, 1986, the date of her subsequent serious fall in the kitchen of her home. While Dr. Bernauer's records do indicate some increase in plaintiff's complaints of pain beginning with her June 23, 1986 visit, they reveal no mention of neck pain until June of 1987.
Plaintiff had a total of twenty doctor's visits between June 23, 1986 and June 5, 1987, or 5 visits per quarter. Ms. Davis had five visits for April, May and June 1986 not counting her visit of June 23, 1986.
Under cross-examination, the following colloquy took place between defense counsel and Dr. Bernauer:
"Q. Is it fair to say, Doctor, that that that whatever relationship could exist between a fall in June of 1986 and surgery that occurred in September of '87 is at least considerably blurred by the presence of an intervening fall in September of 1986?
A. Yes, sir.
Q. Let me ask you, because it is perhaps the most complete document, would you look at the consultation report directed to you from Doctor Moore which forms a part of that set of records?
A. Yes.
Q. Do you see that?
A. Yes.

*565 Q. What, if anything, is significant when we talk about Miss Davis's [sic] neck complaints and her surgery in September of 1987, what, if anything, is significant in the way of medical information contained in this consultation report?
A. According to this report, she told Doctor Moore that her leg had given out on her and she had fallen on her back and that she'd struck the back of her neck, and that she had neck pain after this and complained of pain in the neck radiating in the left arm with some pain in the right arm but no numbness or tingling. And Doctor Moore felt that she possibly had a spinal cord contusion.
. . . . .
Q. And that is in April of 1984?
A. Yes.
Q. That's also related, by history, to a fall?
A. Yes.
Q. And that would be a separate fall from the 1983 fall that was referred to in the American Legion Hospital records?
A. Yes, sir.
Q. I take it that these two falls are significant and would further blur any relationship between anything that happened at Wal-Mart in June of 1986 and the surgery that you performed on Miss Davis in September of 1987?
A. Yes, sir.
Q. How bright is that relationship at this point?
A. I can't measure it."
In sum, plaintiff neither increased her visits to her physician, nor changed her medication profile, nor proved a recognizable link between her June 1986 fall and her neck surgery in September 1987, especially considering her intervening fall in September 1986.
It is well settled that "[i]n any civil case, plaintiff has the burden of proving each and every essential element of ... [her] claim by a preponderance of the evidence". Gustafson v. Koch, 460 So.2d 655 (La.App. 1st Cir.1984). See also Lincoln Big Three, Inc. v. Thomas, 444 So.2d 171 (La.App. 1st Cir.1983), and Green v. City of Alexandria, 413 So.2d 321 (La.App. 3rd Cir.1982).
In the case at bar, it is undisputed that plaintiff was permanently and totally disabled and making regular visits to her physician with complaints of continued back pain before her alleged fall at Wal-Mart. It is also undisputed that after her alleged fall in 1986, plaintiff continued to see her physician at approximately the same interval with the same basic complaints. Further, it was clearly shown that plaintiff sustained a subsequent fall in September 1986.
Considering plaintiff's medical history, her subsequent fall, her medical records and her treating physician's, Dr. Bernauer's, testimony, we conclude that plaintiff failed to prove any injury resulting from her fall in June 1986 beyond mere possibility or speculation. As stated in Mayes v. McKeithen, 213 So.2d 340 (La. App. 1st Cir.1968), writ denied, 215 So.2d 130 (La.1968), certiorari denied, 396 U.S. 868, 90 S.Ct. 108, 24 L.Ed.2d 121 (1969):
"This ... [injury] must be established with reasonable certainty and by a preponderance of the evidence. The showing of mere possibility or probability of its existence is insufficient. Thrash v. Continental Casualty Co., et al., [6 So.2d 75 (2nd La.App.1941)] supra; McGregor v. Saenger-Ehrlich Enterprises, 195 So. 624 (2nd La.App., 1964). Probabilities, surmises, speculations and conjectures cannot be accepted as sufficient grounds to justify a recovery to a plaintiff who is charged with the burden of proof. Williams v. Wolfe, 187 So.2d 763 (1st La.App., 1966); Crier v. Marquette Casualty Co., [159 So.2d 26 (La. App.1963)] supra; Lambert v. State Farm Mutual Auto. Ins. Co., 184 So.2d 107 (4th La.App., 1966)."
Accordingly, for the reasons stated, we reverse the judgment of the trial court. Plaintiff's suit against Wal-Mart, Inc. is hereby dismissed with prejudice. All costs at both the trial level and on appeal are taxed against plaintiff, Linda Davis.
REVERSED AND RENDERED.
NOTES
[1] We note that R.S. 9:2800.6 was next amended by Acts 1990, No. 1025. In amending the statute, Act No. 1025, which became effective September 1, 1990, states: "The provisions of this Act shall apply only to causes of action which arise on or after the effective date of this Act". R.S. 9:2800.6 was passed originally in response to the Louisiana Supreme Court's holding in McCardie, supra, in 1987. Thus, any case tried after July 18, 1988 required that the trial court give jury instructions in accord with R.S. 9:2800.6. However, with the passage of Act 1025 of 1990, any case tried after September 1, 1990 in which the cause of action arose prior to that date, required McCardie instructions. Thus, as we see it, causes of action which arose before September 1, 1990 and tried before that date, but after July 18, 1988, would be governed by R.S. 9:2800.6 as passed by Acts 1988, No. 714; cases whose cause of action arose before September 1, 1990 and which were tried after that date would fall under the McCardie rule; and, any causes of action arising on or after September 1, 1990 would be governed by R.S. 9:2800.6 as amended in 1990. This matter was tried after July 18, 1988 and before the amendment of R.S. 9:2800.6 by Act 1025 of 1990.

Although the constitutionality of R.S. 9:2800.6 was not raised by either party at either the trial or appellate level, we note that a party has no vested right in any particular remedy and cannot insist upon application of any other than existing rules of procedure. Brown v. Indemnity Insurance Company of North America, 108 So.2d 812 (La.App. 2d Cir.1959).
"No vested rights can exist in mere rules of evidence, and provided a party is not deprived of his right to present his side of the case, or any other substantial right, such rules may be adopted, modified, or abolished by the legislature, even though the changes are made applicable to accrued or pending actions and may incidentally affect the rights of parties.
. . . . .
The legislature does not disturb vested rights by the enactment or repeal of laws dispensing with proof in actions. It may establish the requisites of prima facie evidence, and establish, alter, or abolish rules as to presumptions, as long as it does not make presumptive evidence conclusive and preclude the adverse party from showing the truth. It may likewise change existing rules as to burdens of proof, as by shifting the burden of proof from one party to the other, but a statute which does not merely change the burden of proof, but also operates to impair vested property rights, cannot be sustained." (footnotes omitted)
16A C.J.S. Constitutional Law § 273.