CRAIN, Judge.
Plaintiff, Phyllis Quatrevingt Smith, (hereafter Phyllis Quatrevingt), appeals from a judgment of the district court which dismissed her suit, after a jury found defendant, Wal-Mart Stores, Inc., free from fault. We affirm the district court judgment.
On March 16, 1989, at approximately 3:45 p.m., plaintiff, Phyllis Quatrevingt, accompanied by family members, visited the defendant store located in Thibodaux, Louisiana. While at that location, Ms. Quatre-vingt walked through the Garden Center, with the intention of purchasing some garden plants. While in the defendant’s Garden Center area, Ms. Quatrevingt allegedly slipped and fell on an object shaped similar to a peach pit. She sustained injuries to her right knee.
On appeal, Ms. Quatrevingt raises two assignments of error for our review.
In her first assignment of error the plaintiff contends that the trial court erred in its instructions to the jury on the issue of liability.
Our review of the record indicates that plaintiff did not submit a proposed jury charge on the issue of liability. Additionally, she did not object at trial, to the jury charge presented by the court on that issue.
Louisiana Code of Civil Procedure Article 1793 sets forth the basis for preserving an objection concerning instructions to the jury. It provides, in pertinent part:
Art. 1793. Instruction to jury; objections
* * * * * *
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
Since the plaintiff failed to lodge a timely objection to the court’s jury instruction on the issue of liability, that objection was waived, and for that reason, cannot now form the basis for an assignment of error on appeal. La.C.C.P. Art. 1793(C). Oh v. Allstate Insurance Co., 428 So.2d 1078 (La.App., 1st Cir., 1983). See: Trans-Global Alloy v. First National Bank, 583 So.2d 443 (La., 1991).
In her next assignment of error the plaintiff argues that the jury verdict in favor of defendant, Wal Mart Stores, Inc., was clearly wrong and should be reversed. In accord with this reasoning plaintiff asks this Court to reverse the trial court judgment and assess damages. Finding no error in this jury’s judgment, we do not consider the issue of damages.
This case was tried on July 30, 1991, through August 1, 1991. The law governing merchant’s liability at that time was codified in La.R.S. 9:2800.6 This statute became effective on July 18, 1988, and applied to all cases tried on or after the effective date of the statute.[1] Act 1988, No. 714. The statute applicable to this case reads as follows:
La.R.S. 9 Sec. 2800.6. Liability of a merchant for injuries sustained by a person while on the premises of the merchant.
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result *1178 of a hazardous condition while on the merchant’s premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, hut is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
Section 2. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana and shall apply to all cases tried on or after such date.” (Emphasis ours)
The enactment of this statute changed both the burden of proof a plaintiff had to carry and the burden placed on a merchant to exculpate himself from liability in a slip and fall case. Davis v. Wal-Mart, Inc., 594 So.2d 557 (La.App., 3rd Cir., 1992) writ denied, 600 So.2d 608 (La., 1992). See McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La., 1987).
In Rosell v. ESCO, 549 So.2d 840 (La., 1989), the Louisiana Supreme Court discussed the standard of review we utilize in situations such as this. In Rosell, id. at 844, the Court stated, in pertinent part:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330,1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973). ... Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. (Citations Deleted).
In her petition for damages, the plaintiff alleged the following:
At approximately 3:45 p.m. on the aforementioned date, your petitioner, Phyllis Quatrevingt Smith, was walking through the Garden Center at the aforementioned Wal-Mart store with members of her family when she apparently slipped on a foreign object and fell to the ground injuring her right knee.
At trial the plaintiff presented three fact witnesses, (which included herself) who testified concerning her accident.
The plaintiff, Phyllis Quatrevingt testified that on the date of the accident, March 15, 1989, at approximately 3:30 to 4 o’clock p.m., she visited the Wal Mart store in Thibodaux, Louisiana, with her 13 year old son, her mother and her niece. The family parked their car in the store’s parking lot. A garden center was set up, by the store, on the outside of the store, past the sidewalk. The flowers were displayed on a series of pallets which were on the sidewalk (outside the fenced-in garden center). In between the pallets was a walkway which was 6 and 8 inches in width. At the time of the accident, Ms. Quatrevingt had leaned over, picked up some flowers and her foot slipped. Thereafter her feet went out from under her and her right knee struck the cement edge of the curb. According to the plaintiff, her head struck the fence and her elbow hit the pavement. She never saw the peach-like seed before she *1179 fell and she never felt an object under her foot before she fell. She later testified that she felt the seed as she was slipping, but she did not see this object until after she fell.
Plaintiff testified that she had shopped this store before and had, prior to this time, visited the garden center. She stated that on the date in question it was sunny, she could see the pallets and sidewalks and nothing obscured her vision.
Ms. Quatrevingt sought medical attention at the Thibodaux Hospital on the day following this incident. As a diabetic for 12 years she had a series of incidents of weakness and was protective of her physical condition. At the time of treatment, the plaintiff relayed to the treating physician that she “fell at Wal Mart.”
Nicholas Aysen, the plaintiffs 13 year old son testified that he had accompanied his mother and other family members to Wal Mart on the date in question. He further testified that his mother had walked in between a 4 to 6 inch space between the pallets upon which the plants were displayed. He stated that his mother slipped on a pit which was a little bigger than a quarter in size. According to Aysen the pit was 1 to 2 feet from the sidewalk. His mother struck her knee on the sidewalk. He also stated that his mother had shopped in this area before without incident. Following her fall, Nicholas Aysen sought assistance from the store’s personnel to aid his mother. Thereafter they continued their shopping, before returning home.
The plaintiff’s mother, Joel Quatervingt testified that at the time of this incident she heard her daughter yell. This witness then looked over and saw that her daughter had fallen. She was not looking at her daughter before she fell. She did not see where the plaintiff stepped before the fall and she did not know if her daughter had stepped on an object.
The elder Ms. Quatrevingt corroborated the plaintiff’s testimony that it was a sunny day and the fact that they had visited the garden center before, thus, being familiar with the physical surroundings.
The defendant, Wal Mart Stores, Inc. presented four store employees, present on the day of this incident, to establish that the defendant exercised “reasonable care to keep his aisles, passageways and floors in a reasonably safe condition.” La.R.S. 9:2800.6.
Morris Cortez, the department manager of the garden center testified that the employees of the defendant store received safety training in order to aid customers in merchandising and safety. They are taught to clean and check (i.e., “sweeps”). It was Mr. Cortez’s responsibility to see that people in his department and associates received training. He was personally aware that his employee, Brenda Jones, who was assigned to his department, had been trained in safety and cleaning and he had seen her engage in sweeps and cleaning. He testified that she did a good job of sweeping. According to Mr. Cortez, Ms. Jones was responsible for the sweep at 3 o’clock on the day of the accident.
On the date in question, Ms. Jones worked a shift from 3 p.m. until 9 p.m. At 3:30 p.m. this witness saw Ms. Jones conduct her sweep and water the plants. He stated that he would make “rounds” of his department every 25 to 30 minutes, at which time he would make sure the area was swept down, the plants were watered and the customers helped.
The witness did not see the accident, however, he did see Janis Chauvin, Ms. Jones’ immediate supervisor, with the peach-like pit in her hand. According to Mr. Cortez, he saw Ms. Jones physically sweep the area.
Mr. Cortez testified that peach and fruit trees were not sold at this time of the year, but, rather, were sold in January and February.
James LeBoeuf is an assistant manager who works at the defendant’s Thibodaux store. He testified that their employees’ safety training included keeping the store safe and clean for customers, keeping the counters straight and full, cleaning the floors and parking lot. He testified that Morris Cortez, as the department manager *1180 of the garden center, was responsible for training personnel in that department.
Mr. LeBoeuf testified that the parking lot had been cleaned before the accident by a store person called a “99”. This person comes, before the store opens, to sweep the lot and pick up trash. He is also responsible for keeping the store clean. The “99” is responsible for “safety sweeps”, while the associates in the garden center are responsible for keeping that area clean. This person is also responsible for checking people as they enter the garden center.
Mr. LeBoeuf investigated the accident after it occurred. He attempted to speak with the plaintiff, eventually secured a report and took photographs. He also inspected the area of the accident. He testified that peaches and peach seeds were not sold by the store at that time.
Janis Chauvin was an assistant manager in the garden center. She and Mr. Le-Boeuf had set up the plant display. She did not see the plaintiff fall but was summoned thereafter to the scene. She retrieved a dry peach-type pit, upon which defendant allegedly had fallen.
According to Ms. Chauvin there is one employee assigned to conduct “safety sweeps” and clear shopping baskets. There is a man who daily cleans the parking lot in the morning. The safety sweep program, which consists of periodic documented safety checks, was not in effect in the area where plaintiff fell. There was a safety person assigned inside the store and one assigned to the garden area. On this date the safety person was Brenda Jones. Ms. Chauvin testified that, on this date, Ms. Jones had swept the garden center at 3:00 o’clock. Ms. Chauvin, as a department manager, was responsible for making sure Ms. Jones did'her job. At the time of Ms. Chauvin’s inspection before this incident, Ms. Jones was conducting her sweep of this area. Ms. Chauvin testified that the area was clean.
Brenda Jones, the employee charged with the responsibility of keeping the garden area clean, testified that she would conduct safety sweeps often in the area where the plants were situated. A manager would check to see that she was doing her job.
Ms. Jones testified that she did not know the origin of the object upon which plaintiff allegedly fell. She stated that she swept this area just 10 minutes before plaintiffs fall and she specifically remembers sweeping between the pallets. She swept all areas inside and outside. That is, she swept around the chain link fence, sidewalk, and between the pallets. She would have picked up this object if she had seen it.
Based upon this testimony it is apparent that the jury either found that the plaintiff did not prove that she had fallen on a foreign object (i.e. the peach pit) as she had alleged, or they found that the defendant successfully proved that they exercised “reasonable care in keeping their aisles, passageways and floors in a reasonably safe condition.” In either event, these findings are fully supported by the record and, for that reason, are neither manifestly erroneous nor clearly wrong. Rosell v. ESCO, supra.
For the reasons assigned this assignment of error lacks merit.
Accordingly, the judgment of the district court is affirmed at plaintiffs cost.
AFFIRMED.

. This statute was amended in 1990, but, by its terms, the statute, as amended, applied only to "causes of action arising on or after the effective date of this Act”, (i.e., September 1, 1990). Act 1990, No. 1025 Sec. 2.